## McCullough *versus* Wainright.

1. Where ambiguity exists in a written contract, arising from its reference to extrinsic objects, it may be explained by parol testimony as to the situation and character of those objects at the time of the contract; and such evidence is for the jury.  But the law arising on the contract, as thus explained, is for the court.

2. The *bank* of a stream is the continuous margin where vegetation ceases, and the *shore* is the pebbly, sandy, or rocky space between that and low water mark.

ERROR to the District Court of *Allegheny county*.

This was an action of trespass *quare clausum fregit*, by Wainright *vs.* McCullough.  Plea not guilty, with leave, &c.  March 5, 1849.  Verdict for plaintiff.  Wainright owned Wainright's Island and nine acres on the main shore close by.

The material question was the right vested in McCullough by an agreement between him and Wainright, made in August, 1844, which was partly as follows:

"Memorandum of agreement between Joseph Wainright, of the county of Allegheny and State of Pennsylvania, and Michael McCullough, Jr., of the aforesaid State and county, of the other part. The said Wainright of the first part agrees to give said McCullough, Jr., a good and sufficient deed, for what is known as Wainright's Island in the Allegheny river, in the aforesaid county and State, and containing about seven acres, be the same more or less, as also for all the water *privilege made by the said island*, that is now in the right of said Wainright, *and the privilege of erecting any mills or machinery between said island and the east shore, with the liberty of using as much of the (said shore) belonging to Wainright as may be between the water and the trees growing along the same, but not to be construed to abut any dam against any part of Wainright's land on the main shore*."

The consideration of the deed was to be $100 per year, payable semi-annually, or the principal sum of $1666.66.  McCullough first erected a saw-mill *on the island*, but afterwards purchased a site on the main shore, and there erected an expensive steam saw-mill, and constructed a log-way on the east or main shore, and he had logs piled on the top of the main bank, back of or *behind* the trees.  It was alleged, on the part of Wainright, that the log-way was erected without right, and that this, or the logs, or both, obstructed his landing-place, which was important in carrying on a brewery owned by him.  A variety of parol evidence was given.

On the trial, defendant's counsel proposed the following points:

1st. That the situation and true interest of the parties, and the subject matter, are to be considered in the meaning and determining of the contract.

[McCullough *v.* Wainright.]

2d. That for the purpose of aiding the construction of terms used in a written contract or agreement, recourse may be had to the parol evidence, showing the condition of the subject matter of the contract.

3d. That the defendant having clearly the right to use the *east shore* between the water and the trees, the defendant had the right to rest or harbor his rafts and logs there; and if the rise of the water carried the logs or rafts farther in and beyond that space of ground, such result would not amount to a trespass for which this action would lie.

4th. That the actual localities of the ground and the actual position of the *main shore*, as expressed in the contract, is a question of fact, for the jury's consideration and determination, in order to ascertain whether the alleged acts complained of were a trespass or not.

5th. That the quantity of ground or space comprehended or allowed by "said shore between the water and the trees growing along the same," is a question of fact for the consideration of the jury, in view of the subject matter of the contract, and the object and position of the parties to said contract.

LOWRIE, J., affirmed the points, subject to modifications appearing in his charge. He further charged:

1. But it is proper that I should say something of these principles, in their application to the facts in evidence. You will perceive that some difficulty arises from the inaccurate use of the word "shore" in the agreement, it seeming to be used to signify, indiscriminately, shore, bank, and beach. To use more definite language, you would perhaps read the agreement as follows: "Agreed to sell and convey unto the said McCullough, the island known as Wainright's island, together with all the water privilege made thereby, and also the privilege of erecting any mill or machinery between said island and the eastern *bank*, with liberty to use and occupy *for that purpose* so much of the east *beach* belonging to said Wainright as may be between the water and the trees growing along the *east bank;* but said erections shall be so placed that the dam shall abut against the island, and not against the mainland belonging to W." Certainly I should be inclined so to read it.

2. A principal matter in dispute is as to the areal extent of the shore or beach to which the defendant is entitled. It is so much of the shore as may be between the water and the trees growing along *the same*, that is along the shore or bank; for there are the trees.

3. Now it appears by the evidence, illustrated by the defendant, that there is a row of trees growing along on the brow of the bank, where it is broken by the water, and a few growing some distance back of them on the second bank, and especially one or two trees at the second bank a few rods down the river from the termination

[McCullough *v.* Wainright.]

of the first rows and some rods further back from the river.    And
the defendant insists that, even if he be confined to the first row as
far as it goes, yet, when he comes to the end of the row, he has a
right to change his line so as to fall back upon the trees at the
second bank, and thus include within his grant a considerable part
of the land beyond the first bank.

4. You will decide whether this is a reasonable construction of
the agreement under the evidence as to the locality.    Is it probable
that the parties had in contemplation any but the first row of trees,
meaning that this position should stand as a general indication of
the extent of the grant.    Admitting the facts as testified to, and as
illustrated by the defendant, I would so construe it.  ·

5. The rule of law is, that where land is bounded by a class of
objects generally, without any one or more being particularly
specified, these terms indicate the course of lines on the ground to
be ascertained by reference to the objects; and in fixing the exact
place of the lines, a reasonable regard be had to the general course
of the bounding objects.    Where the objects are sufficiently numer-
ous to indicate a clear general course, we cannot change that course
in or over to reach one or two objects of the same character that
are clearly out of the general course.    Where a row of trees on a
bank is made a boundary, and there is a row clearly answering to
this description, its general course along that bank must be fol-
lowed; it will not be allowed to change the line so as to strike one
or two trees on another bank.

6. The term "water privilege" in the agreement cannot be con-
strued to include the right of floating the defendant's logs in upon
the plaintiff's land, where it is overflowed by high water, and using
said land to store them on.    Indeed the parties seem to have in-
tended to include the right of floating and storing logs within the
subsequent clause.

To which instructions of the court the defendant's counsel except.

It was assigned for error, that the court erred as to the construc-
tion of the agreement.

The case was argued by *Burke* and *McCandless*, for plaintiff in
error.—It was alleged that the court erred in limiting the agree-
ment as to the water privilege made by the island simply to the
waterfall, and not extending it to the privileges of the beach neces-
sary to McCullough in carrying on his saw-mill.    That the latter
was entitled to all the advantages connected with the island and
the main shore as a place of deposit for his logs.    That the error
of the court was in calling this a *land*, and not a *water* privilege :
1 *Whar.* 131; 2 *New Hamp.* 259; *Co. Litt.* 5 a b; *Bacon's Ab.
Grant*, H 3; 1 *Rolle's Rep.* 369; 5 *Burrowes* 1824; 4 *Mass.* 266.

*Woods* and *Loomis*, for defendant, Wainright.

[McCullough *v*. Wainright.]

The opinion of the court was delivered by

COULTER, J.—There is nothing in the five errors assigned; and the answer of the court below, to the five points of the defendant respectively, is correct. These points are answered arbitrarily in favor of the defendant, on the questions of law submitted. The court, however, made some observations on their relevancy to the case in hand, as disclosed by the evidence. And this the court had a right, and, indeed, it was their duty, to do.

It is the province of the court to construe a written deed or contract; and in the observations which they made on the agreement of the parties, the court did not advance to the full extent of their prerogative in that respect, instead of going beyond it, or trenching on the province of the jury. Where a writing possesses an ambiguity, arising from reference to extrinsic objects, it may be explained by parol testimony, relative to the nature, situation, and circumstances of those extrinsic objects at the time of the contract. But never, unless this cannot draw the interpretation or construction of the contract, to the jury. It is the province of the court to declare the construction of the contract, according to the true position and relative situation of these extrinsic objects, *dehors* the writing; and it is the province of the jury to find the true situation and character of these objects. The situation of the trees, the low-water mark, the shore, and the particular localities mentioned in the agreement, would be ascertained only by parol testimony, and their relative position in regard to each other. This was a question for the jury. But the law arising on the contract, as thus explained, was for the court. The whole question might be said to be a mixed question of law and fact, and as such, went to the jury, with suitable legal instructions from the court.

The bank of a stream is the continuous margin where vegetation ceases; and the shore is the pebbly, sandy, or rocky space between that and low-water mark. Along the first margin was a row of trees; and behind them, on the second bank, were other trees. The court left it to the jury to say, whether the terms in the contract, granting privilege to McCullough to use as much of the shore belonging to Wainwright as may be between the water and the trees growing along the shore, extended to the second row, or to the first. In this, certainly, they did no injustice to McCullough, because, it seems to me, that the contract line was clearly the first row, nearest the water. On the whole, we see no error prejudicial to plaintiff in error.

The judgment is affirmed.