# James's Appeal.

1. Whether a person holding personal property in pledge for money loaned, can retain such property as security for advances subsequently made, must depend upon the understanding and agreement of the parties at the time such subsequent advances were made.

2. Where a broker has obtained a loan for his principal, and holds certain chattels as security therefor, he cannot, in the absence of a special agreement, appropriate the proceeds of said chattels to the payment of a debt due to him by the principal.

3. The administrator of an insolvent estate, cannot by his mere agreement bind the estate in such manner as to take the assets out of the course of distribution provided by law.

February 3d 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Court of Common Pleas, No. 1, of *Philadelphia county* : Of January Term 1879, No. 30. In equity.

Bill in equity filed by B. W. Harper, administrator of the estate of John P. Bankson, deceased, against William A. James, trading as James & Co.

The facts, as reported by the master, were in substance these : Bankson was in the habit of borrowing money through James, who was a broker. Bankson gave his notes to the lenders, and delivered to James certain whiskey as collateral security therefor. The notes provided that in case they were not paid at maturity, the lenders might sell the whiskey and apply the proceeds to the pay-

ment of the notes. In September 1876, Bankson, through James & Co., obtained two loans from one Poultney, which were secured, as above stated, by a pledge of the whiskey, the quantity of which at this time was more than sufficient to satisfy all claims against it. Shortly thereafter Bankson borrowed from James & Co. on their own account about $1800, for which there was no specific collateral pledged. Bankson died insolvent in December 1876, and the plaintiff was appointed his administrator. With his consent, James sold the whiskey and applied the proceeds to the payment of the notes of Bankson, reserving therefrom $1800 for the payment of his own loan, and claiming a commission. The bill filed by the administrator prayed for discovery, an injunction to restrain the defendant from selling the collateral until an account was stated and general relief. The defendant answered that he had sold the whiskey at the instance of plaintiff, and had rendered him an account thereof, which was approved by plaintiff, and that defendant had no other collateral. The plaintiff filed a general replication, and the case was referred to an examiner and master, who found the facts, in substance, as above, and further that there was no agreement between the parties to sell the collateral for any general account, but that plaintiff was willing that defendant should sell the collateral and apply the proceeds to the payment of the sum of money due and specifically secured by the same.

The collateral notes or bills of sale stated specifically whát the proceeds of collateral sold under this power should be applied to. Neither the due-bill nor check of James & Co. were included as indebtedness to be paid as set forth in the collateral notes or bills of sale.

The master was, therefore, of opinion that the defendant had no right to retain and keep out of the proceeds of the sale of the collaterals the amount of the due bill and the check which constituted the amount of Bankson's indebtedness of $1800 to James & Co. personally. The master further found as a fact that there was not sufficient testimony to establish a custom authorizing a note and bill broker to retain out of the sales of collaterals, held as security for notes discounted by him, a commission for himself of $2\frac{1}{2}$ per cent., and therefore reported that the defendant had no authority to retain the amount charged by him as commissions.

The defendant excepted, and his exceptions having been dismissed by the court, and the master's report confirmed, he took this appeal.

*Samuel Gustine Thompson*, for appellant.—The circumstances here raised the presumption that the new loan was made upon the credit of the pledge, and was so understood by the parties. He who seeks equity must do equity, and the plaintiff seeking the assistance of the court, ought to pay all the moneys due to the creditor, as it is natural to presume that the pledgee would not have

lent the new sum, but upon the credit of the pledge which he had in his hands before: 1 Story Eq., sect. 1034; Anon., 2 Vern. 176; Baxter *v.* Manning, 1 Id. 244; Dennisbray *v.* Metcalfe, 2 Id. .698. James acted in the double capacity of a broker and commission-man, and was entitled to compensation in both capacities.

*John R. Read* and *Silas W. Pettit*, for appellee.—The appellee contends that where one lends money specifically on a certain pledge, and afterwards advances further sums, the presumption is that these latter advances are made on the faith of the pledge given for the former ones, and that equity will not enforce the. return of the pledge because of the payment of the first loan, until the pledgor do equity by paying also the other loans.

This proposition is certainly a doubtful one; but whether sound or not, can have no application in this case, because Poultney and not James had made the former loans, and had the custody of the collateral.

Mr. Justice PAXSON delivered the opinion of the court, March 3d 1879.

Whether a person holding personal property in pledge for money loaned can retain such property as security for advances subsequently made, must depend upon the understanding and agreement of the parties at the time such subsequent advances are made. It is said in Story on Bailments, sec. 304: "The mere existence of a former debt due to the pledgee does not authorize him to detain the pledge for that debt, when it has been put into his hands for another debt or contract, unless there is some just presumption that such was the intention of the parties. The like rule applies to a subsequent debt or loan contracted by the pledger; for in such a case the new debt or loan will not be deemed attached to the pledge, so that the pledgee may retain the same therefor, unless from all the circumstances there is just ground of presumption that the new debt or loan was made upon the credit of the pledge, and was so understood by the parties. The rule in all these cases strictly applies, that the particular contract is to govern the rights of the parties. *Modus et conventio vincunt legem.*" The learned author cites numerous authorities in support of his text. In Buckley *v.* Garrett, 10 P. F. Smith 333, it was held that if a debtor at or immediately after the execution of a mortgage on his property to a creditor, transfers to him a policy of insurance against fire on the mortgaged premises, though nothing be expressed at the time, or it be transferred as collateral security generally, it is a conclusion of law from the very nature of the transaction, that the policy is to be held by the creditor as a collateral security for the mortgage. Says SHARSWOOD, J.: "It would require evidence of an express agreement or understanding to authorize the assignee to apply the amount

[James's Appeal.]

of the insurance received, in the event of a loss, to any other debt or liability." The appellant, while conceding that the rule at law is as above stated, contends that in equity it is not so in the case of a pledge of chattels, and that in such case, without any distinct proof of a contract for that purpose, the pledge may be held until the subsequent debt or advance is paid, as well as the original debt. Such a rule is undoubtedly recognised in Story on Equity, at sec. 1034. The ground of the distinction is that he who seeks equity must do equity, and the plaintiff seeking the assistance of the court, ought to pay all the moneys due to the creditor to entitle him to equitable relief. Conceding all that can be claimed for this principle, it does not apply to this case. The money for which the whiskey was pledged was borrowed by Bankson from Charles W. Poultney. The latter held the notes, together with the transfer of the whiskey, and power to sell the same upon the non-payment of said notes. The appellant was a mere broker, and negotiated the transaction. That Poultney permitted him to retain the papers and control the whiskey, can make no difference. The right of possession and the legal title were in Poultney. Had Bankson paid the notes, he could have been compelled to return the whiskey under the express terms of the bill of sale. Had Poultney made further advances, and this bill had been filed against him, the equitable rule referred to might possibly have been enforced. It has no application to the appellant, as the whiskey was pledged to other parties for money loaned by them at the time he made the advances to Bankson of the respective sums of $1200 and $600.

The master finds as a fact that there was no agreement between the appellant and the administrator of Bankson that the former should sell the whiskey on general account; but that, on the contrary, the administrator was willing that the collaterals should be sold, and the proceeds applied to the payment of the notes for which they were specifically held.

We do not think this is important, as it is clear the administrator of an insolvent estate cannot, by his mere agreement, bind the estate in such manner as to take the assets out of the course of distribution provided by law.

We need not discuss the questions of brokerage and commissions. While no opinion was filed by the court below, the learned master has given sufficient reasons to justify his conclusions upon these points.

> The decree is affirmed and the appeal dismissed, at the costs of the appellant.

Justices MERCUR and GORDON dissented.