155   233
f40SC¹460

# National Dredging Co. *v.* Mundy et al., Appellants.

*Contract—Evidence—Question for jury.*

Defendants had two contracts with the United States government, one to remove Smith's and Windmill islands in the Delaware river, and the other for dredging at League island in the same river. Plaintiffs agreed by written contract to place a dredge at defendants' "Philadelphia work," and to do the dredging for a certain sum per cubic yard. In the same writing they agreed to permit defendants to use a particular dredge at League island for which plaintiffs were to pay a certain sum per day. No work was done by plaintiffs at Smith's and Windmill islands, but their dredge was used at League island. Defendants claimed that they should be charged with only the actual amount of the material removed at the rates per cubic yard mentioned in the contract, claiming that the words "Philadelphia work" applied to all three of the islands. The court left it to the jury to say what was the understanding of the parties as to the words "Philadelphia work." *Held*, not to be error.

*Contract for dredging—Custom—Day's work.*

In a contract for dredging where a certain sum per day is to be paid for the use of a dredge, it is not improper for the court to charge that the time which constitutes a day's work for a dredge must be determined from the evidence as to the custom of the business on the subject.

Argued March 27, 1893. Appeal, No. 251, Jan T., 1893, by defendants, James A. Mundy & Co., from judgment of C. P. No. 1, Phila. Co., March T., 1892, No. 494, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Assumpsit on contract for dredging.

At the trial before BRÉGY, J., the following letter, dated at Wilmington, Del., Aug. 10, 1891, addressed to defendants and signed by plaintiffs, was offered in evidence :

"We will place a grapple dredge on your Philadelphia work, as per our verbal agreement, viz.: You shall keep her on the softest part of said work (which is best adapted to a grapple dredge). You shall, at your expense, run anchors when necessary, and keep the dredge constantly supplied with your scows, into which to place the dredged material. Any time lost through your failure to do that you shall pay demurrage for, at the rate of seven dollars per hour.

"The report of the government inspector on the dredge shall be taken as the basis for settlement.

" You shall pay us, on the fifth day of each month, or when you receive your estimate from the government, for all material placed in scows by us during the previous month, six and one half cents per cubic yard, and the account of the government inspector on the dredge shall be taken as the basis of settlement.

" It is understood that we have the privilege of keeping a dredge on the work as long as your contract shall continue; but, if you find it impossible to keep the dredge supplied with scows, you are at liberty to suspend operations by giving three days' notice in writing. You are at liberty to use the dredge ' Ajax,' with a long boom, to throw material over the bank at League island, for which service you shall pay us one hundred and twenty-five dollars per day. The dredge ' Alva ' is at your disposal for the same purpose, at sixty-five dollars per day. If you should require the use of her steam bucket, you may have it for twenty dollars per day. Payment for throwing over to be made on the fifth day of the month, as above."

Under objection and exception Alvin R. Morrison, a witness for plaintiff, testified : " Q. What was the contract ? A. I made a contract with the National Dredging Company for the machine ' Ajax ' with a boom sixty-five feet long, and a two-and-a-half-yard bucket, at $125 per day ; and for the machine ' Alva,' with a sixty-foot boom and a one-and-three-fourths-yard bucket, at $65.00 per day, when they were digging out the islands. Objected to by Mr. Peace. By Judge Brégy: Q. Have you fully answered the question which was put to you ? A. No, sir. Q. Well, go on and answer it. Objected to by Mr. Peace. A. When they were digging in scows they had to be paid six cents and a half a yard and seven dollars an hour for lost time, for waiting for scows at Smith's island. By Mr. Walton: Q. Did you tell Mr. Mundy what you had done ? A. Yes, sir. Q. What did he say ? A. He objected to paying seven dollars an hour for lost time, and he would not pay the bill. Q. Were you present when the written contract was made subsequently ? A. No, sir. Q. Had you a conversation with Mr. Mundy in regard to it ? A. After I made the contract with Mr. Barker, when Mr. Mundy refused to pay seven dollars an hour, I telegraphed Mr. Barker to come, and then we met Mr. Barker at eleven o'clock, and the same agreement I had made with Mr.

Barker before was again made when Mr. Mundy was present. Q. When was the time to begin? A. When the barges left. The 'Ajax' at that time was lying at Smith's island, and Mr. Mundy and I agreed to tow her to Wilmington to get her long boom, and the time was to commence when she left Wilmington. The time of the 'Alva' was to commence when she left the mouth of Duck creek." [1]

The same witness further testified: " Q. Do you know what part of the work the first clause of the agreement refers to? A. I never saw the agreement. Six and a half cents a yard was for digging the mud at Smith's island. Q. That was the agreement you made? A. Yes, sir. Mr. Peace: I ask that this last testimony of the witness be stricken out. Judge BRÉGY: I cannot strike it out. It was given in response to a question. Your objection came too late." [2]

Defendant's offer to prove by the government inspector the amount of work done each day, to be followed by evidence that they ought to have done more, was excluded. [3]

Thomas Boys, a witness for defendant, was asked: " What ought the 'Ajax' to have dug out and thrown over the bank proper, do you know?" Objected to. Objection sustained. [4]

R. H. Pierson, a witness for defendant, testified: " Q. Now tell the jury, from your experience, whether the 'Ajax' did a fair day's work while she was banking at League island? A. Well, I do not see why she did not do more than she did do. Q. How much could she have done there under the circumstances under which she was working? A. That I could not say; but I can say what I think she should have done. Q. What should she have done? A. All of 1,500 or 1,600 yards. Q. Per day? A. Yes, sir. Q. What ought the 'Alva' to have done under the circumstances of the digging there? Q. I think she ought to have done 1,000 yards a day."

The court subsequently struck out this testimony. [5, 6.]

The court charged in part as follows:

[" One item of dispute is as to certain work done by the dredge 'Achilles.' It seems that the plaintiff has charged the defendant for the use of the 'Achilles' for eight days at so much per day, and the defendant claims that the charge for those eight days is erroneous and that he ought not to pay it, as under the contract she was working by the cubic yard and

that the contract applied to that particular work. You have heard the evidence on the subject. There is nothing mysterious about it. It alludes to the Philadelphia work. Now one side contends that the words 'Philadelphia work' mean the work at Smith's island and Windmill island, while the other side contends that the words 'Philadelphia work' apply to all the work including League island. You will remember what the testimony is on the subject. It was admitted that the work was loading on or off scows, and it was that kind of work which, if done at Smith's island or Windmill island, was to be paid for at $.06½ per cubic yard. If the defendant's contention that the words 'Philadelphia work,'—if there was an agreement between the parties or an understanding between them at the time the contract was made, that those words were meant to apply to the League island work, then the plaintiff should charge the defendant only for 4400 yards at $.06½ a yard, which would make $286, instead of charging for the eight days. But if the contention of the plaintiff is correct, that the understanding was that the words 'Philadelphia work' in the contract were inserted and intended to apply,—if the understanding was that they should apply only to Windmill island and Smith's island, then so far as the $.06½ a cubic yard is concerned the plaintiff had a right to charge so much a day for the use of that boat. So it will depend upon what you think is the fact from the testimony, how you will apply it. If you think the plaintiff is right in his contention, then he has the right to charge that amount of money, but if you believe the defendant's contention, then the plaintiff should only charge $286 instead of $800, making a difference of $514. That is about the only contention that applies to the wording of the contract, so far as I understand it."] [14]

Plaintiff's point was among others as follows:

"1. The plaintiff's statement that so much of the contract which provides for work at six and a half cents per cubic yard was limited to digging and removing material from Smith's and Windmill islands, not being denied by the defendants, except eight days work by the 'Achilles,' all digging in scows and other work done at League island may be treated as day work in making up your verdict." Affirmed. [7]

Defendant's points were among others as follows:

" 3. I also instruct you, gentlemen, that the plaintiffs under the evidence cannot recover for the time occupied in bringing their dredges from another state here to work, but can only recover for the time these dredges were actually serving the defendants as contemplated by the contract and the custom applicable to such contracts. *Answer :* I answer that by saying, if you are satisfied that the custom of the trade was to charge for the time of leaving the wharf, then the charge is correct, otherwise, it is not. Also I want to say to you that I have no recollection of anybody pretending that there was an actual expression or agreement about that; if there was, of course, that would rule it." [8]

" 4. If you find, gentlemen, that Mr. Barker, of the plaintiff company, represented to Mr. Mundy, at and prior to making this contract, that the dredges ' Ajax ' and ' Alva ' could respectively dig and throw 2000 and 1500 cubic yards of material, and this was their capacity for work of this kind, and that this representation induced defendants to make the contract, and that these dredges failed to do that amount of work, then you may make the defendants an allowance for such deficiency as the evidence warrants." Refused. [9]

" 5. If you find that the dredges ' Ajax ' and ' Alva ' did not do a reasonable day's work in digging and throwing material, but through the inefficiency of either the crew or boom or on account of low tide, their work fell below the represented capacity of each to an unusual and unreasonable degree, and this not by defendant's fault, you should make an allowance to defendants for such deficiency, and plaintiffs would not be entitled to recover the full amount charged." Refused. [10]

" 6. Now it appears from the undisputed testimony that the ' Ajax ' arrived to work on August 13th, very late in the day, and according to defendant's evidence worked fifty minutes, and according to the plaintiff's evidence about two hours; the plaintiff has charged a full day. I charge you that the amount plaintiff is entitled to recover is at the rate of $125 per day for the time at work. *Answer:* This depends upon the custom of the business. If the custom was to charge from the time of leaving the wharf at Wilmington and on her arrival she did that work, then they could charge for a full day, otherwise not." [11]

" 9. In estimating whether the dredges ' Ajax ' and ' Alva ' did a fair and reasonable day's work, it is proper for you to consider what these dredges could do, what plaintiff said they could, and the actual work done." Refused. [12]

" 14. I instruct you, gentlemen, that the plaintiff has not offered sufficient proof to entitle it to recover for the charges of inspector's meals, $29.40, and for the charges under date of November 3d, 4th, 5th, 7th and 9th, and you will, therefore, disallow its claim in this respect. *Answer :* The part, so far as the meals are concerned, I affirm, the other you will have to decide from the testimony." [13]

Verdict and judgment for plaintiff for full amount claimed. Defendants appealed.

*Errors assigned* were (1–6) rulings on evidence; (7–14) instructions, quoting instructions, offers and evidence, but not bills of exceptions.

*William Henry Peace,* for appellants, cited: Wilson v. Lyle, 21 W. N. 75, and 23 W. N. 309; Alexander v. Hoffman, 5 W. & S. 382.

*Henry F. Walton, John K. Andre* with him, for appellees.

PER CURIAM, April 17, 1893 :

There appears to be nothing in either of the fourteen specifications of error that requires a reversal of the judgment entered on the verdict. We are not convinced that there was any error in the admission or exclusion of testimony, or in any of the learned judge's rulings on questions of law. The questions of fact presented by the evidence were exclusively for the consideration of the jury, and, to them, they were submitted with instructions of which defendants have no just reason to complain.

Judgment affirmed.