## Oleon, Appellant, *v.* Rosenbloom & Company.

*Negotiable instruments—Promissory notes—Collateral security —Application of collateral to other indebtedness—Rights of holder.*

Where a promissory note recites that collateral has been deposited as security for the payment of this or any other liability or liabilities "to the holder hereof now due or to become due or that may be hereafter contracted," and authorizes the sale of the property pledged, on the nonpayment of any of the liabilities mentioned, and the application of the proceeds to the payment of "either or all of said above mentioned liabilities as the holder hereof shall deem proper," a holder for value and before maturity by endorsement from the payee may apply the collateral to the payment of other obligations owing by the maker to him, as well as to the payment of the note, and is not required upon tender of the amount of the note at maturity, to surrender the collateral as long as other obligations owing him by the maker remain unsatisfied.

Argued Oct. 12, 1914. Appeal, No. 5, Oct. T., 1914, by plaintiffs, from judgment of Superior Court, April T., 1913, No. 86, reversing judgment of C. P. Allegheny Co., Nov. T., 1909, No. 568, on verdict for plaintiffs in case of M. Oleon and Eugene Herzog, trading as Keystone Distributing Company, v. S. Rosenbloom, trading as S. Rosenbloom and Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Appeal from Superior Court.

The opinion of the Supreme Court states the facts.

The Superior Court reversed the judgment of the Court of Common Pleas entered on verdict for plaintiff for $641.99 in an opinion by PORTER, J., and directed

that judgment be entered for defendant n. o. v.   Plaintiffs appealed.

*Error assigned* was the judgment of the Superior Court.

*Benjamin C. Tunison,* with him *James A. Wakefield* for appellants.—A creditor cannot on payment of the debt for which he holds a pledge, retain the pledge as security for other liability except by virtue of an agreement with the debtor: Smuller v. Union Canal Co., 37 Pa. 68; James's App., 89 Pa. 54; Selden v. Bank, 69 Pa. 424; Buckley v. Garrett, 60 Pa. 333; Jones on Pledges and Collateral Securities, Sec. 356, and cases cited.

The case of Gillet v. Bank of America, 160 N. Y., 549 (55 N. E. Repr. 292), should guide the court in construing the contract here involved.

*A. C. Stein,* with him *A. C. Teplitz,* for appellee, cited: Richardson v. Winnissimmet National Bank, 189 Mass. 25 (75 N. E. Repr. 97); Mulert v. National Bank of Tarentum, 210 Fed. 857.

OPINION BY MR. JUSTICE BROWN, January 2, 1915:

This appeal is from the judgment of the Superior Court reversing a judgment obtained by the appellants as plaintiffs in the court below: Oleon v. Rosenbloom, 55 Sup. Ct. 1.   There is no dispute about the facts, which appear in the following excerpt from the opinion of the Superior Court: "The plaintiffs, being indebted to the J. M. Selden Company, executed and delivered to that company two negotiable collateral notes for the amount of said indebtedness and attached to said notes warehouse certificates for whiskey to the aggregate amount of fifty-five barrels.   These notes were payable to the order of J. M. Selden Company, ninety days after their respective dates, and that they were in all respects negotiable cannot be questioned.   Each of the notes re-

cited, as the terms upon which the attached collateral was pledged, that the maker had deposited therewith as collateral security for the payment of this or any other liability or liabilities 'to the holder hereof, now due or to become due, or that may be hereafter contracted, the following property,' (here follows a description of the certificates attached) and authorized the sale of the property pledged 'on the nonperformance of these terms or the nonpayment of any of the liabilities above mentioned, at any time or times hereafter, without demand, advertisement or notice.....'. And after deducting legal or other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales so to be made, to any, either or all of said above mentioned liabilities, as the holder hereof shall deem proper, returning the overplus to the undersigned.' The J. M. Seldon Company indorsed and delivered these notes, before maturity and for full value, to the defendant. When the notes became due the plaintiffs were indebted to the defendant in the sum of $1,080.12, in addition to the amount of the notes. The plaintiffs tendered to the defendant the amount of their indebtedness represented by the notes and demanded the notes and the collateral thereto attached. The defendant asserted the right, under the covenants of the notes, to retain the collateral as security for the debt of $1,080.12 not represented by the notes and declined to surrender the certificates for the whiskey. The plaintiffs then brought this action to recover the value of the whiskey which had been pledged. It was admitted at the trial that the defendant had converted the whiskey and that its value at the time the notes became due was $1,163.15. The plaintiffs recovered a verdict and judgment in the court below in the sum of $641.99, the excess in the value of the whiskey over the amount of the notes." The court below directed a verdict for the plaintiffs on the ground that the collateral was only for the protection of their indebtedness to the payee in the notes, the J. M. Selden Company.

The two notes involved are identical in all respects except as to dates and amounts. In each one of them, immediately following the promissory part, there is the following: "Having deposited herewith as collateral security for payment of this or any other liability or liabilities of......to the holder hereof now due or to become due, or that may be hereafter contracted, the following property......" As the blank space in this clause was not filled in, counsel for appellants now contend that it is impossible to say whose liabilities were to be protected by the collateral. The liabilities were so clearly those of the makers of each note that it is to be read as if the words "Keystone Distributing Company" were inserted in the blank space. Such an omission may always be supplied by construction of law, if from the context it appears with certainty what word or. words were inadvertently omitted: 2 Parson on Contracts, 9th Ed., 716; Page on Contracts, Sec. 1125; Sweesey v. Kitchen, 80 Pa. 160. In supplying omitted words which the context clearly shows must be read in connection with it, to make the instrument the full expression of the manifest intention and understanding of the parties to it, the same is neither altered, varied nor contradicted, but merely put in the shape in which it was intended it should be at the time it was executed.

If the appellee had the right to apply to the liability of the appellants to himself the proceeds of the whiskey in excess of the amount due on the two notes given to the J. M. Selden Company, that right must be found in the pledging clauses of the notes. They contain the agreement as to what may be done with the security. If it was pledged merely for the two notes, upon the payment of the same to the appellee, the holder of them, the pledge could not be retained by him as security for any other indebtedness due him by the appellants: Smuller v. Union Canal Company, 37 Pa. 68; James's App., 89 Pa. 54; Buckley v. Garrett, 60 Pa. 333; Jones on Pledges and Collateral Securities, 3d Ed., 356. The appellants,

as the owners of the pledged property, could have agreed that it might be put to the use made of it by the appellee, and the sole question before us is whether they did so agree. The face of the notes must decide this.

The appellee became the holder of the obligations by endorsement from the J. M. Selden Company, the payee and original holder; and he became the holder for value before maturity. The term "holder," as applied to negotiable paper, has always had the well-recognized legal meaning of the payee or indorsee of it, entitled to receive the sum for which it calls. With us the definition of the term is now statutory, and it means "the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof": Act of May 16, 1901, P. L. 194, Sec. 191. That the appellee, as the holder of the notes at the time they matured, had the right to apply the value of the whiskey to the payment of the indebtedness of the appellants represented by them is conceded, but the contention is that he had no right to use the security for any other purposes, and that, upon appellants' payment of the said two notes, they were entitled to a return of the pledge. This would undoubtedly be true if the whiskey had been originally pledged as security only for the payment of these two notes and for liability due or to become due to the J. M. Selden Company. If such was the intention of the makers, they failed to give expression to it, as they might readily have done by confining the right to use the pledge to a payee named in the obligations. They did not do so, however. Their covenant as to the collateral is not with the payee named in the notes, but with the holder thereof, and as to this the Superior Court very properly said: "The law presumes that, when the plaintiffs made their notes payable to the order of the J. M. Selden Company, they knew that title to the notes and the right to possession of the collateral would pass by endorsement and delivery, and that the party who thus acquired title to the notes and the collateral, before maturity, would be the holder. If it was the in-

tention of the parties that the only holder should be the payee, then there was no occasion for making the notes payable to the order of the payee. These notes were in every respect negotiable and these plaintiffs had given them that character. The covenant which made available the property pledged, as security for liabilities of the makers to any person who might become a holder for value before maturity of the notes, may have tended to facilitate the negotiation of the paper, and the plaintiffs had the advantage of that fact. The term 'holder,' when used with regard to negotiable instruments, has a well-recognized legal meaning, and has been defined by statute......These plaintiffs launched their negotiable commercial paper upon the business world, and they have no just cause of complaint that they were called upon to perform their covenants to 'the holder' of that paper at the time it became due." The promise of the appellants is to pay the amount of each note "to the order of J. M. Selden Co.," but the covenant as to what may be done with the collateral is not with that company alone. It is with the "holder" of the obligations, and the stipulation is that he may hold the collateral, not only to secure the payment of each note, but for any other liability or liabilities of the makers, due or to become due to him. Four times the term "holder" appears in each note, and nowhere in it is there anything from which an inference can be drawn that the broad commercial meaning of the term "holder" was intended to be qualified or restricted so as to apply only to the payee named in it. With the knowledge which the law presumes the appellants had that their notes, negotiable in form, might, and probably would, pass from the payee into the hands of another holder, no other meaning is to be given to their agreement as to the right of a subsequent holder to use the collateral than that given to it by the Superior Court. It was construed by that court just as it was written, in words so plain as to be susceptible of but one meaning.

We have not been referred to any of our own cases in which the question before us on this appeal has been considered and passed upon, though in Champlin v. Smith, 164 Pa. 481, it was held that a note payable to order, with the warrant of attorney to confess judgment "in favor of the holder of the note," warranted a confession in favor of a subsequent holder. There are, however, two well-considered cases in other jurisdictions which sustain the judgment of the Superior Court. The first is Richardson v. Winnissimmet Nat. Bank, 189 Mass. 25. In that case a note, payable to the defendant bank or its order, contained a clause showing that it was secured by the deposit of certain named collateral securities, "with authority to sell the same, or any collaterals substituted for or added to the above, without notice, either at public or private sale, or otherwise, at the option of the said holder or holders hereof, on the non-performance of this promise, he or they applying the net proceeds to the payment of this note and accounting to us for the surplus, if any; and it is hereby agreed that such surplus, or any excess of collaterals upon this note, shall be applicable to any other note or claim against us held by said holder or holders." Before the maturity of the note the bank sold and delivered it, with the collateral, to another bank, which held a note endorsed by the maker. This bank purchased the note for the purpose of applying any surplus from the sale of the collateral to the payment of the liability of the maker upon his endorsement. of the note held by it, and, in holding that the purchasing bank had the right to so use the collateral, it was said: "This note plainly shows the intention of the parties that the right to enforce the payment of it should pass to the order of the payee, and that the party thus designated would be the holder. If it was the intention of the parties that the only holder should be the payee, then there was no occasion for using the phrase 'holder or holders.' The phrase 'said holder or holders' is broad enough to include any person holding the note

under the order of the payee.  There certainly would seem to be no reason why the power to sell the securities for the payment of this note should not pass with the note.  We do not understand the plaintiff to contend to the contrary as to so much of the power.  We see no sound reason for holding that 'holder or holders' means one thing in one part of the note and another thing in another part.  It seems clear that the holder who can exercise the power to sell the collateral and apply the proceeds to the payment of this note is the same holder who has the right to apply the surplus to any note held by him against the maker of the note.  It it be said that this is a curious and unusual way of doing business, and such intention on the part of the maker is not to be found, except where clearly expressed the answer is that in this case it is clearly expressed.  The words are broad enough to show such intent, and any other interpretation fails to give due force to their meaning.  Moreover to hold otherwise is to give one meaning to the words 'holder or holders' in one place, and another meaning in another."  The other case sustaining the view entertained by the Superior Court is Mulert, Trustee in Bankruptcy of M. K. Salsbury, v. National Bank of Tarentum, 210 Fed. Rep. 857.  Salsbury made and executed a collateral note, payable on demand, to the order of himself, and endorsed and delivered the same, together with certain securities, to the Bank of Pittsburgh.  It contained the following clause: "On demand, after date, for value received, I promise to pay to the order of......myself......with interest ......seventeen thousand......dollars, having deposited herewith as collateral security for payment of this or any other liability or liabilities of the undersigned to the holder hereof, now due or to become due, or that may be hereafter contracted, the following property, viz": another bank was the holder of Salsbury's unsecured obligations, and, in order to secure the same, bought from the Bank of Pittsburgh the said collateral note.  The

collateral accompanying it was subsequently sold for an amount exceeding the sum due on the note originally held by the Bank of Pittsburgh, and the question arose whether the collateral secured merely that note or protected as well the other notes held by the purchasing bank upon which Salsbury was endorser. In holding that such notes were within the protecting clause of the pledge in the note given to the Bank of Pittsburgh, the United States Circuit Court of Appeals for the Third Circuit ruled as follows: "The case turns on the meaning and scope of the word 'holder.' In ascertaining that meaning, we must bear in mind that the instrument in which it is here used is a promissory, demand note, negotiable in form, payable to the order of the maker, who has conferred negotiability upon it by an unconditional endorsement. Such endorsement imparted to the note the possibility of passage by delivery and of ownership without assignment. Possession, the mere holding of such a note, without assignment, created title and ownership, and conferred on such holder the legal capacity to bring suit and enforce payment. Indeed, the possession or holding, the sanctity of the holding, and the integrity and incontestability of such held paper, constitute the foundations on which the whole superstructure of negotiable paper, and the legal principles applicable thereto, stand......Recognizing, therefore, as Salsbury must be held to have recognized, the legal principles applicable to the creation, currency, and ownership of negotiable paper, and invoking, as he did, the application of such principles by endorsing and negotiating a negotiable note payable to his own order, and thus conferring upon it the possibility of others holding it, it would seem that by the use of the words 'the holder hereof,' 'liability or liabilities of the undersigned to the holder hereof,' 'with full power and authority to the holder hereof to sell and assign and deliver the whole of the above-mentioned security,' and 'to apply the residue of the proceeds of such sale or sales, so to be made, to

pay any, either or all of said above-mentioned liabilities, as the holder hereof may deem proper, returning the overplus to the undersigned,' he meant to give to the word 'holder' in this note its well-understood, broad, inclusive, legal meaning, and to enhance the negotiability of his paper by conferring on every subsequent purchaser thereof all the advantages enjoyed by holders of such paper. There is nothing in the note itself to evidence an intent on his part to restrict the word 'holder' to the Bank of Pittsburgh, and to so restrict it we must make it read 'the holder, to wit: the Bank of Pittsburgh.' This, we think, would be to write into the note a change for which we have no warrant."

In asking us to sustain this appeal, counsel for appellants rely mainly upon Gillet v. Bank of America, 160 N. Y. 549. The distinction between that case and the one under consideration is very marked. There, the "other liabilities" of the maker of the note to be secured by the pledged securities were those due or to become due "to the said bank," the payee of the note. If this had been the covenant of the appellants, the verdict directed by the court below would have been proper, and the judgment on it could not be disturbed.

The judgment of the Superior Court is affirmed.