Armstrong *v.* Standard Ice Co., Appellant.

208

Argued October 1, 1937. 

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Robert B. Ely,* with him *Buckman & Buckman,* for appellant.

*Samuel M. Brodsky,* with him *Elwood S. Levy,* for appellee.

Opinion by Parker, J., November 17, 1937:

The plaintiff has the verdict of a jury on which judgment was entered in an action in assumpsit brought to

recover a balance claimed to be due from the defendant for wages under a written agreement for his employment. The defendant complains of the refusal of its motions for binding instructions and for judgment n. o. v. We are required on this appeal to determine whether under the circumstances it was the duty of the court to construe the contract, and if it was, then to interpret the writing.

Leo Armstrong and others sold to the defendant an ice plant and on April 2, 1931 plaintiff and defendant entered into a written contract for the employment of plaintiff for a period of one year from the date of the writing at a fixed weekly salary with the provision "that unless this contract shall be terminated by five (5) days written notice prior to the expiration thereof, the same shall be renewed, subject to all of its terms and conditions, for a further period of one (1) year and so on from year to year until either party gives to the other five (5) days written notice of its or his intention to terminate the same."

The plaintiff was in the employ of defendant until September, 1932 at the wages fixed at the time the contract was made when the compensation was reduced by mutual agreement from $65 to $55 per week. In April, 1934 there was a further reduction to $49.50 a week. On June 28, 1935 the defendant discharged plaintiff and paid him by check five days' future wages, which payment Armstrong accepted by cashing the check.

The defendant relied upon the fourth paragraph of the contract for its right to so discharge the plaintiff. The wording of this paragraph of the contract gave rise to the dispute between the parties and is as follows: "4. The said Employe further covenants and agrees that he will not leave the employ of the Ice Company prior to the expiration of the term hereinbefore mentioned, or any extension thereof, without first giving five (5) days written notice and the said

Ice Company, if it desires to end said employment prior to the expiration of this agreement, or any extension thereof, without notice, upon payment of five days' wages." This was followed by the further stipulation "that nothing herein contained shall be construed to prevent the discharge, without previous notice or payment of five (5) days' wages, of said Employe when and if the said Employe be improperly or unfaithfully performing his duties." The employee also agreed that during his employment by the Ice Company and for a period of two years after he should cease to be an employee he would not "engage in any manner whatsoever in the ice business" within a radius of five miles from the Premier plant of the Ice Company.

The defendant contends that the contract was terminable at any time on the part of the plaintiff by giving five days' written notice and upon the part of the defendant without notice upon payment of five days' wages. The position of the plaintiff is that paragraph four is so "vague, inconsistent and ambiguous" that it does "not constitute a complete expression of the intent of the parties" and that it was therefore proper "for the trial court to submit its construction to the jury in the light of all the circumstances of the case."

Defendant in support of its position refers to two circumstances. Plaintiff testified that he read the contract before he signed it and was aware of its provisions. The record further shows: "Q. You are particularly aware of the provision in paragraph 4 that the Ice Company may, if it desires, prior to the expiration, terminate it, without notice, upon the payment of five days' wages? ...... Q. You were aware of that when you signed it? A. That was agreeable both ways, five days in writing, with either one of us, if anything should happen that we didn't want each other's services, and that is what I understood both ways.". It was also admitted by the plaintiff that he received and

accepted a check for five days' pay for that period after he ceased to work for defendant and that he cashed the check after consultation with his attorney.

We think it clear that the writing was not ambiguous, that it was for the court to interpret, and that the relevant circumstances confirm our construction. It is a fundamental rule of law that where a contract is not ambiguous, the construction of the contract is for the court: *Neale v. Dempster,* 184 Pa. 482, 39 A. 289; 13 C. J. 783. It is also true that where a contract is ambiguous and parol evidence is introduced in aid of its interpretation, the question of its meaning should be left to the jury: *McCullough v. Wainright,* 14 Pa. 171; *National Dredging Co. v. Mundy,* 155 Pa. 233, 26 A. 386. Here, however, the relevant parol evidence comes from the mouth of the plaintiff and is not in dispute. It follows that the interpretation was for the court.

We find no uncertainty in the fourth paragraph of the contract. "The court will if possible give effect to all parts of the instrument and a construction which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable": 2 Williston on Contracts, §619. "An interpretation which gives a reasonable, lawful and effective meaning to all manifestations of intention is preferred to an interpretation which leaves a part of such manifestations unreasonable, unlawful or of no effect": Restatement, Contracts §236 (a). Also see *Watters v. Bredin,* 70 Pa. 235; *Lane v. Nelson,* 167 Pa. 602, 605, 31 A. 864.

The paragraph in question deals with the subject of terminating the agreement "prior to the expiration of the term." It therefore cannot refer to a termination at the end of any year or in case of an improper or unfaithful performance of duties. In addition, a different provision is specifically made for such situations. In case the employment is to be terminated at the end of a year, five days' previous notice is to be given and

if terminated for cause no notice is to be given. If the relationship is to be ended during a term the employee is to give five days' notice, but the employer is to pay five days' extra wages. Not only is the subject matter, an ending of the relationship during the term, made prominent, but the clause deals with the rights of both employer and employee, and provides terms applicable to a cancellation by each. It is not unusual either in speech or writing to omit a word which the hearer or reader will naturally supply. In fact, such a situation is common where corresponding situations are treated in a single sentence. In supplying words omitted we do not make a contract for the parties or do violence to their own writing. We, on the contrary, seek the contractual intent from the writing itself. The only reasonable and logical conclusion is that either employer or employee might end the employment during the term, the employee by giving five days' written notice and the defendant by paying five days' extra wages.

In giving effect to the meaning of a writing particular words are sometimes wholly disregarded or, as here, supplied. "Such an omission may always be supplied by construction of law, if from the context it appears with certainty what word or words were inadvertently omitted. ...... In supplying omitted words which the context clearly shows must be read in connection with it, to make the instrument the full expression of the manifest intention and understanding of the parties to it, the same is neither altered, varied nor contradicted, but merely put in the shape in which it was intended it should be at the time it was executed": *Oleon v. Rosenbloom & Co.,* 247 Pa. 250, 253, 93 A. 473.

The plaintiff placed the same construction on this particular paragraph of the contract that we do, as is shown by his own admissions. He admitted on cross examination that he was familiar with the provisions of paragraph four, that it was agreeable both ways, and that he understood that it worked both ways if anything

should happen that either of the parties desired to terminate the contract before its expiration. Not only so, but the plaintiff acted upon this construction when he accepted a check for five days' pay after consultation with his counsel. We have, therefore, not only the declarations of the plaintiff, but his acts showing his own interpretation of the intention of the parties, that is, that the contract might be cancelled before the end of any year.

The interpretation given by the parties themselves to the contract as shown by their acts or declarations will ordinarily be adopted by the court: *Kendall v. Klapperthal Co.,* 202 Pa. 596, 609, 52 A. 92; *Gillespie v. Iseman,* 210 Pa. 1, 5, 59 A. 266; *McMillin v. Titus,* 222 Pa. 500, 72 A. 240; *Tustin v. Phila. & Reading C. & I. Co.,* 250 Pa. 425, 95 A. 595.

Appellant suggests that it is unreasonable to assume that plaintiff would have agreed to not engage in the ice business within a radius of five miles of the Premier plant for a period of two years after the employment should cease if the employment could be ended at any time. This loses sight of the fact that plaintiff had been part owner of the plant and had sold his interest, which was acquired by the defendant. Such agreements are not uncommon in the case of sales. In any event, we are not making a contract for the parties, but are only interpreting that contract and ascertaining their intention from the writing. We are of the opinion that it was the clear intent of the parties as exhibited by the agreement that it should be terminable at any time on conditions and that it was error to submit the interpretation of the contract to a jury.

Judgment reversed and it is directed that judgment be now entered for the defendant.