## Harris v. Harris

*George E. Kearns, Jr.,* for plaintiff.
*Joseph I. Diamond,* for defendant.

TOAL, J., July 24, 1963.—This matter is before the court on the petition of Dorothy Perkins Harris to open a judgment in the amount of $3,500, confessed against her by virtue of a warrant of attorney contained in a note. The judgment was entered by confession on November 13, 1961, on a note dated March 13, 1961, payable to Hamilton K. Harris, Jr., former husband of said Dorothy Perkins Harris. Defendant contends that at the time she executed the said note (a.) She lacked capacity due to voluntary intoxication; (b.) that it was signed under duress of plaintiff; (c.) it was executed as a result of fraudulent misrepresentation of plaintiff; and (d.) that at the time the note was signed it was incomplete and that thereafter it was completed without authorization.

Plaintiff filed an answer denying defendant's allegations and under "New Matter" alleged that plaintiff and defendant privately agreed that defendant would execute a note to plaintiff's order to offset another note which defendant's attorney insisted that plaintiff execute to defendant's order as part of a property settlement preliminary to divorce between the parties.

Defendant has also filed a petition to strike the judgment from the record on the ground that judgment was confessed by plaintiff without the intervention of an attorney. The prothonotary entered judgment pursuant to the Act of June 10, 1957, P. L. 281, sec. 1, as amended, 12 PS §739. Further that the note in question failed to disclose any date when the instrument matures and had a number of blank spaces on the printed form which were not filled in.

An examination of the note discloses that it reads: "———————— after date ——————— promise to Pay Hamilton K. Harris, Jr. or order, Three Thousand Five Hundred —00— Dollars without defalcation, value received, with interest. And further I do hereby authorize and empower any Attorney of any Court of Record of Pennsylvania, or elsewhere, to appear for and enter Judgment against me for the above sum, with or without declaration. . . ."

The note is signed by defendant, Dorothy Perkins Harris, and is witnessed by James R. Mosher.

The mere omission to fill in the blank space provided for a due date is of no consequence because the note provides that the amount therein is to be paid "after date" making the note payable on demand. The failure to fill in the other blank space with the personal pronoun "I" is also of no consequence because from the context of the note it is apparent that the pronoun "I" is the word to be supplied to make the note read complete. The face of the note shows that the amount to be paid is the sum of $3,500 and, the prothonotary did not have to guess what was to be paid, but was able to ascertain from the face of the note the exact sum to be paid by the maker of the note. See the case of Oleon v. Rosenbloom & Company, 247 Pa. 250, 253, which states:

"Such an omission may always be supplied by construction of law, if from the context it appears with certainly what word or words were inadvertently omit-

ted. . . . In supplying omitted words which the context clearly shows must be read in connection with it, to make the instrument the full expression of the manifest intention and understanding of the parties to it, the same is neither altered, varied nor contradicted, but merely put in the shape in which it was intended it should be at the time it was executed."

We see no reason why the judgment entered by confession in the case at bar should be stricken from the record and therefore the petition to strike must be dismissed.

The remaining questions before the court relate to whether or not defendant, Dorothy Perkins Harris, has presented sufficient evidence of (1.) Lack of capacity to sign the note; (2.) that said note was signed under duress of plaintiff; (3.) that said note was executed as a result of fraudulent misrepresentation; and (4.) that at the time the note was signed it was incomplete and, that thereafter it was completed without authorization.

In Pennsylvania the law with regard to the opening of judgments is clear and well defined. It is perhaps best expressed in the case of Ehnes v. Wagner, 388 Pa. 102 (1957), where the Supreme Court stated:

"A petition to open judgment is addressed to the sound discretion of the court below, . . . To open judgment, the petitioner must not only aver a valid defense but he must also establish equitable considerations which impress the court with the need for relief."

Petitioner must satisfy the court that she exercised due care and diligence at the time of the signing and that plaintiff is guilty of fraud. Petitioner's version is that the note was signed in her apartment, not in the presence of witnesses and under threats by plaintiff to expose her as an alcoholic to her employers. She testified as follows:

A. "The doorbell rang again and he came to the door with Jimmy. And I still had the latch on, and I took

it off because I wanted to see him. I did not want a divorce at that time; and I do remember he turned to the maintenance man and said come in, I want you for a witness. And I slammed the door in Jimmy's face, and said, I remember saying, 'There will be no witnesses in here' I was very frightened. He came in and I talked to him and I don't know what we talked about, and he had a sheet of paper like this, and I knew that . . ."

Q. "Now is that your signature, did you in fact sign that note?

A. "Yes, I stood there and he talked and talked.

Q. "Why did you sign that note?

A. "I think mostly fear.

Q. "Fear of what?

A. "My job.

Q. "Physical abuse?

A. "Mental.

Q. "Did he ever physically abuse you? Did he force you to sign it?

The court: "She said fear of her job.

Q. "What kind of threats, Mrs. Harris?

A. "That he would go to the Inquirer and tell them I was an alcoholic. And he said again that day—and I was making enough of my own trouble and I mean I did not need his help—

Q. "You eventually did lose your job because of an alcoholic condition?

A. "I did.

Q. "Was it because he informed?

A. "No, this I did myself; they were wonderful about it and they explained, and I have been in A. A. for eight months.

Q. "What did you expect to gain when you signed that note, Mrs. Harris?

A. "I don't know.

Q. "What did you sign the note for?

A. "I was afraid.

Q. "You were afraid?

A. "I was afraid of him. He said he would help me, and he had inferred many times in the past—.

Q. "Help you in what way, Mrs. Harris?

A. "Why, he is a member, too, and I was afraid, and, as I said, I don't think consciously I wanted a divorce at that time, we had only lived together 17 months, and I knew that my slips had been a lot of it, but I cannot tell you what, I didn't expect to gain anything, I just wanted him to leave me alone, and I was afraid, and I didn't want to lose my job at the Inquirer.

Q. "Did you realize the import of what you were doing when you signed that note?

A. "No.

Q. "What did you think you were doing when you signed that?

A. "Well, in an empty apartment with two people, and I signed, I remember signing Dorothy Perkins, thinking, well now he will leave me alone.

Q. "Is that your maiden name?

A. "Yes and, I don't know, as I said, I was partially intoxicated and I didn't think very clearly, but he made me add the word 'Harris'.

Q. "How long after you signed the 'Dorothy Perkins' was the name 'Harris' added?

A. "Well, I guess he talked about it for another 20 minutes, 15 minutes or so, and then I asked him to help me. And he said the best thing for you to do is to go to a hospital, and he left, and said he would be back. And he did not come back, not that time.

By the court:

Q. "Did you owe your husband or your ex-husband any money at the time you signed this note?

A. "No, your honor, I did not.

Q. "Did you get any consideration for the note at all?

A. "No, sir, I did not."

Plaintiff's testimony was that after leaving his wife in September 1959, he consulted his attorney and filed suit for divorce in the winter of 1960. That his attorney and his wife's attorney thereafter entered negotiations for a property settlement. That he refused the demands of his wife until 14 months later, in March 1961. That at that time he and defendant had a private agreement whereby defendant would sign a note to his order in the amount of $3,500, which would offset the note which, he, plaintiff, would thereafter sign to defendant's order in settlement of her property claims in their divorce case. He testified that on March 13, 1961, he picked up defendant at her apartment and drove her to Darby where defendant signed the note before a notary public. He stated he thereafter signed a note to defendant's order at his attorney's office at Norristown and that he was positive that his wife signed the note which is the subject of this present case before he signed his note. The record discloses that plaintiff executed his note on March 9, 1961, and that the note he received from defendant was dated March 13, 1961, or four days later. Plaintiff admitted under cross-examination that he filled in all the blank spaces on the note and that his wife did nothing more than sign her name to the note. He also stated that he asked her to sign the name "Harris" to her previously written signature "Dorothy Perkins" and added that he thought she left out the name "Harris" deliberately to make the note invalid.

Whether or not the judgment in this case should be opened and defendant permitted to interpose a defense depends entirely upon the facts and circumstances surrounding the signing of the note at the time it was executed. The testimony herein on each side is so diametrically opposed to the other that either plaintiff is guilty of perjury or conversely defendant

has committed perjury. This is not a case of a mere conflict of evidence where reasonable minds may differ as to the facts, but rather a case of wilfull, deliberate perjury on one side or the other. The issue in essence then, is the credibility of the parties and witnesses. The note was signed either at defendant's apartment in Rosemont under the circumstances she related, or it was signed at Darby under the circumstances as related by plaintiff.

We are therefore of the opinion that the matter should be submitted to a jury to determine the credibility of the witnesses, and, accordingly the judgment in this case should be opened and the defendant let into a defense on the merits.

We make the following:

### Order

And now, July 24, 1963, a petition to strike and a petition to open having been filed by defendant, Dorothy Perkins Harris, in the above entitled case, and the matters coming on to be heard, and after the taking of testimony and the filing of written briefs by both sides; and after due and careful consideration of the matters it is hereby ordered and adjudged as follows:

1. That the petition to strike the judgment be and it is hereby dismissed and, the striking of the judgment in question is hereby refused; and

2. That the petition to open the judgment be and it is hereby sustained and the judgment in question is hereby opened and defendant, Dorothy Perkins Harris, is hereby let into a defense on the merits.

3. That the pleadings heretofore filed in this case in the nature of petition and answer and new matter be the pleadings used in the trial of this case before a jury.

4. That the matter be pretried in the usual manner as all other civil cases to be tried on the merits.

22

5. That an exception be granted to plaintiff, Hamilton K. Harris, Jr., for the action of the court herein.