504 A.2d 306

**Oscar DARLINGTON, Appellant,**

v.

**GENERAL ELECTRIC, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 15, 1984.

Filed Jan. 31, 1986.

184

Arlene G. Simolike, Philadelphia, for appellant.

Keith D. Heinold, Philadelphia, for appellee.

Before CAVANAUGH, BECK and TAMILIA, JJ.

CAVANAUGH, Judge:

Oscar Darlington appeals from the judgment n.o.v. entered on September 30, 1983 in the Court of Common Pleas of Philadelphia County. We affirm.

Darlington had been employed as an engineer for General Electric for fifteen years when, in 1976, he was accused of

certain expense and phone account irregularities and was subsequently discharged. Darlington brought suit contesting the discharge, and a trial was held in March of 1983 before the Honorable Murray C. Goldman and a jury. The jury returned a verdict for Darlington and assessed damages against General Electric in the amount of $100,000.00. General Electric then sought a judgment n.o.v. and a new trial. Oral argument on these motions was heard before Judge Goldman on September 14, 1983. On September 30th of the same year, the judge granted General Electric's motion for judgment n.o.v. and dismissed the motion for a new trial as moot. This appeal followed.

Our scope of review in this case is as follows: "On an appeal from the entry of a judgment n.o.v., all of the evidence and the reasonable inferences therefrom must be viewed in the light most favorable to the verdict-winner." *Handfinger v. Philadelphia Gas Works*, 439 Pa. 130, 132, 266 A.2d 769, 771 (1970). "A judgment n.o.v. should be entered only in a clear case and any doubts should be resolved in favor of the verdict." *Atkins v. Urban Redevelopment Authority of Pittsburgh*, 489 Pa. 344, 351, 414 A.2d 100, 103 (1980). It is not our function on appeal to retry the case or to arrive at our own conclusions as to questions of fact.

In the instant case, appellant Oscar Darlington contends that his employment at General Electric was not "at-will" and that his discharge was in contravention of an employment contract entered into at the time he was hired. He also alleges that the manner in which the company effected his discharge constitutes a wrongful discharge.

The facts, viewed in the light most favorable to the appellant as verdict winner, are as follows. In late 1961, appellant and General Electric entered into an employment contract. Appellant, a professional engineer was already several years into his career when he was recruited to work for General Electric. At his job interview with the Manager of Professional Recruitment, Anthony J. Marini, a discussion ensued concerning appellant's intent to settle into a

company with a long range program for engineers with skill and experience similar to his. Marini outlined "in some detail" the procedures that would be followed in the event that a problem arose. Marini gave appellant a pamphlet which contained a description of the procedures and also informed him of provisions for transfer in case a "problem" arose. (Appellant subsequently took advantage of the transfer provision.) Marini testified that General Electric agreed to employ appellant for so long as performance on both sides was satisfactory. However, in 1976, company officials accused appellant of certain expense and phone account violations. Appellant's position was that he did not knowingly and deliberately engage in the impermissible conduct he was charged with but was merely following company policy as he knew it. The company subsequently discharged appellant.

■ Appellant alleges that his discharge was in contravention of an employment contract entered into at the time he was hired in 1961 which provided that the term of his employment was to be for a reasonable length of time. If such a contract existed, and if the reasonable time had not passed, appellant's employment could not have been terminated at-will but could only have been rightfully severed with "just cause." Before assessing the merits of this controversy, we must first briefly examine the history of employment at-will.

Since at least 1891, Pennsylvania courts have recognized the rule that, absent a contract, employees may be discharged at any time, for any reason, or for no reason at all. *Henry v. Pittsburgh & Lake Erie Railroad Co.*, 139 Pa. 289, 21 A. 157 (1891). *See also Forman v. BRI Corporation*, 532 F.Supp. 49 (E.D.Pa.1982); *Rogers v. International Business Machines Corporation*, 500 F.Supp. 867 (W.D. Pa.1980); *Linn v. Employers' Reinsurance Corporation*, 397 Pa. 153, 153 A.2d 483 (1959); *Fawcett v. Monongahela Railway Company*, 391 Pa. 134, 137 A.2d 768 (1958); *McKinney v. Armco Steel Corporation*, 270 F.Supp. 360 (W.D.Pa.1967).

Every employment relationship is also a contractual relationship. Even at-will employment is formed by contract. The type of employment (the duration and the permissible grounds for discharge) is determined by the type of contract entered into. In the absence of an express understanding between employer and employee concerning the duration of their contract, there has always been considerable difficulty in providing the appropriate legal reaction to employee dismissal. As early as 1562, an English statute prohibited the discharge of an employee "unless it be for some reasonable and sufficient cause or matter...." Statute of Labourers, 5 Eliz. c. 4 (1562) (found in 6 Pickering's Statutes 159–160 (1763)). When the statute was repealed, English courts continued to insist that a contract of employment for an indefinite term was presumed to be a contract for one year. *See* 1 Blackstone, Commentaries 335 (1832). That view was accepted by some American courts and rejected by others. *See* Feinman, *The Development of The Employment At Will Rule*, 20 J.Amer.L.Hist. 118 (1976). The dominant American position started to become clear at the end of the nineteenth century: an employment contract of indefinite duration was deemed to be terminable at will for any cause or no cause, regardless of the "morality" of the situation. There is little question that the rationale for the prevailing rule was based on the assumption that it was necessary to preserve managerial discretion in the work place and to maintain freedom of contract. The dominant philosophy of freedom of contract failed to consider the lack of bargaining power in an individual employee, i.e., that there can be no freedom of contract between parties of grossly unequal bargaining power. Since that time, there has been a growing recognition of that fact as evidenced by numerous Congressional mandates allowing collective bargaining which result in agreements precluding arbitrary dismissal of employees. *See e.g.*, 5 U.S.C. § 7513 which requires "such cause as will promote the efficiency of the service" to be shown to dismiss a civil servant. Other Congressional directives preclude dismissal of employees in retaliation for reporting employee activity which violates

certain statutes. *See e.g.,* Occupational Safety and Health Act, 29 U.S.C. § 660 and the Fair Labor Standards Act, 29 U.S.C. § 215. Over the years, the presumption of "at-will" employment has afforded courts and counsel alike the solace of certainty inherent in any iron-clad rule. In recent years, however, it has been frequently suggested that the presumption is an antiquated remnant of a by-gone era. The at-will presumption flourished in the *laissez-faire* climate of the latter part of the last century. The philosophy of "freedom of contract", of which the at-will presumption was a manifestation, served to fuel the furnace of the free enterprise system. Because commerce was king, laws were tailored to facilitate business and courts were very much disinclined to impede the natural workings of the free enterprise system. Thus, laws were developed whereby courts largely left business decisions to businessmen. It has been noted with some degree of frequency, however, that since the age of unrestricted *laissez-faire* economics has passed, the at-will presumption should no longer be adhered to with "unquestioned deference." *See Woolley v. Hoffmann-LaRoche, Inc.,* 99 N.J. 284, 491 A.2d 1257 (1985). The presumption has been called "a stubborn progeny" of the common law, "an anachronism." *Pierce, Mann and Roberts, Employee Termination At Will: A Principled Approach,* 28 Vill.L.Rev. 1 (1982). In recent years, courts have become increasingly willing to afford the discharged employee relief based on ever-widening theories grounded in contract and also on causes of action sounding in tort. But, despite the expanding bases upon which courts now afford relief to discharged employees, they still exhibit a predilection for precedent and a corresponding reluctance to effect the wholesale elimination of the at-will presumption. Courts have, in fact, only impinged on the presumption in gradual, piecemeal ways. "[A]bsent a statutory or contractual provision, the employers' right to hire and fire is virtually absolute." *O'Neill v. ARA Services, Inc.,* 457 F.Supp. 182, 186 (E.D.Pa.1978). The citadel of the at-will presumption has been eroded of late, but it has not been toppled. Perhaps the time has come for employees to be

given greater protection in this area. This was the opinion of one commentator, who cautioned, however, that "Pennsylvania courts ... should at this time avoid further modification of the at-will employment relationship. Restraint should be observed to minimize the adverse effects that any complete abrogation might have on employment, productive efficiency, and overburdening of the judicial process with additional cases. Time and thought should be given *now* to whether abrogation of the doctrine should occur through 'judicial erosion' or 'legislative mandate.'" K.H. Decker, *At-Will Employment in Pennsylvania—A Proposal For Its Abolition and Statutory Regulation,* 87 Dickinson L.Rev. 477, 479 (1983). In the Report of the Committee on Labor and Employment Law of the Association of the Bar of the City of New York, *At-Will Employment and the Problem of Unjust Dismissal,* 36 Rec. A.B.City N.Y. 157, 184 (1981), (as quoted in Judge Gibbon's dissent in *Bruffett v. Warner Communications, Inc.,* 692 F.2d 910, 922–23 (3d Cir.1982)), the Committee attacks the at-will rule as no longer appropriately dealing with employment relations:

"The modern reality of relative immobility in the labor market, encouraged by a web of ties that bind the employee to the job, places in question a doctrine that rests on a theoretical non-mutuality of obligation, and may have the effect of empowering the employer to work considerable unfairness in particular cases or to use the discharge weapon to subvert established policies.

"Some commentators have urged that all employees in this country should enjoy general protections against discharge without 'just cause.' *Such a change would be most appropriately accomplished by legislation.*" (Emphasis added.)

Even had we been asked to review the question of whether the at-will presumption should be abrogated, we are not at liberty to so hold given our Supreme Court's stance on the issue. *See Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974). Moreover, we believe that if terminable-at-will contracts are to be forbidden, the judicial

process may be an inappropriate forum for such sweeping policy change.

The first issue we must address is whether the discharged employee, Oscar Darlington, has overcome the at-will presumption by presenting evidence which, when viewed in the light most favorable to him as verdict winner, shows that he and General Electric contracted for something other than at-will employment, *and* that he is entitled to relief based on such contract.

Appellant argues that he and General Electric entered into a contract for a reasonable length of time. In support of this, he cites the following: Appellant sought a professional position at General Electric and was offered employment in a program involving a new space engineering facility which dealt with long-term government projects. "Flexibility" on the part of his employers was stressed, as was an employer commitment to work through any employer-employee problem which might arise. When a problem did arise (the alleged account violations), appellant was asked to provide explanations for some of his suspect conduct. This company action, according to appellant, serves to clarify the parties' intent that he could only be discharged for just cause. Moreover, Mr. Marini, Manager of Professional Recruitment, testified that his role was to insure that appellant was given a fair hearing.

At trial, Marini disclaimed authority to bind the company to a contract for any specific duration. However, he testified that he had the authority to state the terms of salary and project assignment to the new employee. Even if General Electric did not afford Marini express authority to bind the company to a contract for a specific duration, it may have clothed him with *apparent* authority to do so. "Apparent authority may ... arise because the agent has been placed in such a position that a person of ordinary prudence, who was conversant with the nature of the particular business and its usages, would be justified in believing that the agent was authorized." W.E. Sell, *Sell on Agency* § 35 (1975). However, we need not inquire as to whether

General Electric placed Mr. Marini in a position of apparent authority because even if it did, we find no evidence that appellant was discharged in contravention of a contract.

"There is much litigation in service contracts over the length of the term of employment. This is due to the fact that employment contracts ... are usually very informal, with brevity in wording and much uncertainty in meaning." 3A Corbin, Contracts § 684 (1960). "The formation of the relationship of master and servant or employer and employee is in general determined by the principles governing the formation of other contracts." 53 Am.Jur.2d *Master and Servant* § 17 (1970).

> "[I]t is the intention of the parties which is the ultimate guide, and, in order to ascertain that intention, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject matter of the agreement. Thus, contracts which do not fix a definite time for the duration of the relationship which they create are sometimes construed as providing for a reasonable time or some particular period inferred from the nature and surrounding circumstances of the undertaking."

*Price v. Confair*, 366 Pa. 538, 542, 79 A.2d 224, 226 (1951). *See also Lubrecht v. Laurel Stripping Company*, 387 Pa. 393, 127 A.2d 687 (1956); *Slonaker v. P.G. Pub. Co.*, 338 Pa. 292, 13 A.2d 48 (1940); *Forman v. BRI Corporation*, 532 F.Supp. 49 (E.D.Pa.1982); Restatement (Second) of Agency § 442 Comment A. "Where one party to [an employment] contract asserts that the parties intended for it to run for some reasonable time, they must establish 'something in the nature and circumstances of the undertaking which would create [such an] inference.'" *Forman v. BRI Corporation*, 532 F.Supp. at 50 (E.D.Pa.1982) (citation omitted).

Rather than singling out any lone factor, appellant contends that the totality of circumstances surrounding his hiring evinces the parties' intent that the employment was

to be for a reasonable length of time. An implied promise to discharge an employee only for cause may arise in various ways. The employee may justifiably rely upon an implied promise that the employment will be terminated only for cause. Certainly, if the employee was induced to leave his former employment with the assurance that he would not be dismissed without cause in the new employment, there is a bargained-for-exchange amounting to consideration which binds the new employer to its promise not to dismiss absent cause. In such a situation, the promise induced the detriment *and* the detriment induced the promise so that the necessary elements of consideration are present. (The classic statement of both requirements is found in the opinion of Mr. Justice Holmes in *Wisconsin & Michigan Ry. v. Powers*, 191 U.S. 379, 24 S.Ct. 107, 48 L.Ed. 229 (1903)). A promise inducing detrimental reliance may also be enforceable if the elements of § 90 of the Restatement (Second) of Contracts are present. However, the mere fact that an employee surrendered his or her former position does not necessarily suggest that the employer-promisor should have contemplated such reliance. Appellant implies that his fifteen years service is *not* a reasonable length of time. He does not say what would be a reasonable length of time. We find it elementary contract law that if the contract is for a reasonable length of time, after such a period has passed, the employer should be able to discharge the employee at will. We do not believe that a hiring for a reasonable length of time means that one so hired can never be fired *except* for just cause. Nevertheless, appellant has presented nothing to persuade us that his contract was for a reasonable length of time. The appellant's individual contentions do not, in and of themselves, evince such a contract and nor do we think that the sum total of all of the contentions require that we find the contract to take on any more definite a form.

■ The fact that appellant was hired to fill a *professional* position offers no indicia whatsoever that the parties intended to overcome the at-will presumption. Were we to

hold otherwise, we would expect the same deference to be accorded every discharged employee who was hired to fill a professional position. No precedent demands that we depart so radically from the policy underlying the at-will presumption.

■ The fact that appellant was hired to work on *long-term* government projects is not helpful to his allegation that he could only be discharged for cause.

Whether a particular employment contract is terminable-at-will is a question of interpretation.

"The question of interpretation of language and conduct—the question of what is the meaning that should be given by a court to the words of a contract, is a question of fact, not a question of law."

. . . .

"We must bear in mind, however, that *this question of fact is like other questions of fact in this: it may be a question that should be answered by the judge rather than by the jury.*"

"*[I]f the evidence is so clear that no reasonable man would determine the issue before the court in any way but one, the court will itself determine the issue.*"

3 A. Corbin, *Corbin on Contracts* (1960). (Emphasis added). If the meaning is "so clear ... a jury's verdict to the contrary would be set aside." *Id.*

The term *long range project* is, in and of itself, too vague and unspecified to overcome the presumption. "Generally, employment contracts for broad, unspecified durations do not overcome the [at will] presumption." *Forman v. BRI Corporation*, 532 F.Supp. 49, 51 (E.D.Pa.1982). A contract for "permanent employment" has likewise been held to be insufficient to overcome the presumption. *Rogers v. International Business Machines Corporation*, 500 F.Supp. 867, (W.D.Pa.1980); *Moorhouse v. Boeing Company*, 501 F.Supp. 390 (E.D.Pa.1980); *Green v. Medford Knitwear Mills, Inc.*, 408 F.Supp. 577 (E.D.Pa.1976). *But See Solo-*

*mon v. Luria,* 213 Pa.Super. 87, 246 A.2d 435 (1968); and *Lucacher v. Kerson,* 158 Pa.Super. 437, 45 A.2d 245 (1946).

■ Courts also find that terms such as *employment will continue so long as performance is satisfactory* are too ambiguous to overcome the presumption. *Fleming v. Mack Trucks,* 508 F.Supp. 917 (E.D.Pa.1981). What is meant by the term "satisfactory" is entirely too unclear to be of value to the discharged employee. Since the employment relation is often of an intimate nature, it would be appropriate to regard the term "satisfactory" as meaning the *personal* satisfaction of the employer. Even if a requirement of good faith is read into such a term, or for that matter, even if good faith is implied in any at-will employment contract, this does not mean that the employer may not discharge *at will.* The very able opinion of the Supreme Court of Connecticut in *Magnan v. Anaconda Industries, Inc.,* 193 Conn. 558, 479 A.2d 781 (1984) states:

"Although we endorse the applicability of the good faith and fair dealing principle to employment contracts, its essence is the fulfillment of the reasonable expectations of the parties. Where employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right."

Definiteness is required to overcome the at-will presumption. Professor Farnsworth has written:

"Conscious of the traditionally intimate nature of the relationship between employer and employee, courts have regularly found that [there is no language in the contract relevant to termination of the employee] *despite absolute promises on both sides.* Then by implication, they have almost invariably supplied a term allowing either party to terminate at will."

E.A. Farnsworth, *Contracts* 532 (1982) (emphasis added). It is, of course, an established principle that an employer and an employee can effectively contract for a specific duration, (for example, when they agree that the employment is to last for two years). No such contract exists presently. Courts are highly reluctant to make definite

that which the parties themselves failed to do. In analogous fashion, the Uniform Commercial Code may be instructive on this point. The Code has liberalized the requirements of definiteness in relation to contract formation. However, even the liberalized contract law of the Code which permits a contract to be found with many open terms emphasizes two fundamental requirements: (1) a manifest intention to make a contract, and (2) a reasonably certain basis for giving an appropriate remedy. 13 Pa.C.S. § 2204(3). If an employee has begun to perform with the acquiescence of the employer, there can be no question that the parties intended to make a contract. However, absent other manifestations of intention, how shall a court read a definite term into such a contract to provide an appropriate remedy for an employee upon his or her dismissal? Even using the liberal standards of the Uniform Commercial Code as a guide, it is not possible to decide upon a suitable term of employment where there is no objective manifestation of the parties' intention to guide the court. This is not to suggest that courts have not read equitable terms into contracts even though they have been reluctant to admit that they are "remaking" the contract of the parties. Where intention of the parties, though obscure, is discernible it must be followed. However, where intent does not exist, courts should be extremely cautious in creating new contractual terms.

 Appellant also contends that the fact that General Electric asked him to provide explanations for some of his suspect conduct is relevant to clarifying the parties' intent that the contract could be terminated only for just cause. The parties' own interpretation of a contract, as shown by their acts and declarations, "will ordinarily be adopted by the court." *Armstrong v. Standard Ice Co.*, 129 Pa.Super. 207, 195 A. 171 (1937). In the instant case, however, General Electric's request of appellant to provide explanations may be readily accounted for by something other than a desire to adhere to an existing contract. By allowing appellant some opportunity to explain his conduct, and by

having Mr. Marini insure a fair hearing for him, General Electric may well have been following a company policy designed to foster sound relations with its employees. The future effect of holding that this action alone is sufficient evidence to overcome the at-will presumption could serve to discourage employers from adopting such worthwhile policies. Moreover, this action is simply too indefinite to support such an interpretation. The "flexibility" on the part of the employer which was stressed at the job interview, and the employer commitment to work through any employer-employee problem which might arise are also altogether too vague to overcome the presumption.

In *Adams v. Budd Co.*, 583 F.Supp. 711, 714 (E.D.Pa. 1984), the court wrote: "[plaintiff] contends that Budd's practice of promoting from within, coupled with the expectation that once promoted to management, the employee remains there until he retires, tends to establish an implied contract for lifetime employment." The court disagreed. "Reliance on the bare supposition that the position was expected to last until retirement does not establish a specific term of employment. Under Pennsylvania law such vague and conclusory statements are not sufficient to overcome the presumption of employment at will." In *Rogers v. International Business Machines Corporation*, 500 F.Supp. 867, 869 (W.D.Pa.1980), the court wrote: "[P]laintiff alleges an implied contract. He contends that defendant's 'promote from within' policy, including transfer and promotion practices, coupled with statements contained in the Manager's Manual, and other general communications, tend to establish an implied contract of employment for 'his entire career.'" The court disagreed, stating that "[r]eliance on the vague and conclusory statements contained in the material of record is insufficient as a matter of law to establish a specific term of employment." In both *Adams* and *Rogers*, the court granted the employer's motion for summary judgment despite the contention of the discharged employee that a contract implied-in-fact existed. Although *Adams* and *Rogers* involved contentions of contracts for

definite terms while the instant case involves a contention of a contract for a reasonable length of time, we find their analysis to be pertinent to the question before us. Appellant has presented us with nothing more than vague and conclusory contentions in support of his contention of a contract for à reasonable. length of time. *Lubrecht v. Laurel Stripping Company*, 387 Pa. 393, 127 A.2d 687 (1956) is distinguishable. There, the issue was submitted to the jury which found that the employment was not terminable at will. The discharged employee had engineering skills which fitted him for the supervisory position he was hired to fill, he sacrificed other work to assume his duties, and the *contract itself* afforded an inference that the employment was not to be terminable at-will. This latter factor is not present instantly.

Appellant also maintains that there was *sufficient additional consideration* present which, by itself, was sufficient to overcome the at-will presumption. He argues that he had previously been employed at Honeywell where he was being urged to assume a supervisory position and that General Electric solicited him to work for it. Moreover, while at General Electric, he was asked to perform additional duties which included teaching a course at Penn State (without additional time to prepare) and a heavy travel schedule (which forced him to remain away from his family, and for which he was paid no overtime—even when he sometimes worked double shifts). These additional duties, he contends, cost him time and money but put him no further ahead in General Electric's evaluation or compensation of his job performance.

Since at least 1946, Pennsylvania courts have recognized that even contracts for an indefinite duration can be brought out of the at-will presumption by a showing that the employee gave his employer additional consideration *other* than the services for which he was hired. *See Lucacher v. Kerson, supra.* The term "consideration" is not used here as it is in the usual contractual context to signify a *validation* device. The term is used, rather, more as an

*interpretation* device. When "sufficient additional consideration" is present, courts infer that the parties *intended* that the contract will not be terminable at-will. This inference may be nothing more than a legal fiction because it is possible that in a given case, the parties never truly contemplated how long the employment would last even though additional consideration is present. Even so, the at-will presumption would be overcome. On the other hand, if the parties specifically agreed that the employment would be *at-will*, even though additional consideration were present, we would expect a court to construe the contract according to the parties' stated intention and hold it to be at-will. Thus, we start with the usual at-will presumption which, let us say, has not been overcome by evidence of a contract for a term or for a reasonable length of time. Then, if sufficient additional consideration is present, the law presumes this to be sufficient to rebut the at-will presumption. Such a contract could not be rightfully terminated at-will but would continue for a reasonable length of time. 56 C.J.S. *Master and Servant* § 31. However, the presumption created by the additional consideration rule could *itself* be rebutted by evidence that the parties specifically contracted for employment at-will.

A classic example of the effect of sufficient additional consideration is found in a lower court case, *Huguet v. Foodsales, Inc.*, 19 Pa.D. & C.3d 376 (1980). There, the employee was hired "for so long as he could 'cut the mustard.'" *Id.* at 379. Despite this vague contractual language, which itself is clearly insufficient to overcome the at-will presumption, the court found that the contract was not terminable at-will because the new employee gave consideration additional to his services incident to his hiring. The additional consideration was the sale of employee's business to the employer. The presence of sufficient additional consideration indicates that the employee has come to the employment relation with bargaining strength greater than that of the usual employee. When additional consideration is present, courts infer that the parties intended that

the contract not be terminable at will. Or, if the parties did not *actually so intend* (but did not intend to the contrary, either), then *fairness* requires that the employer, who has been given the additional consideration, cannot terminate the employment without just cause.

In *Bravman v. Bassett Furniture Industries, Inc.*, 552 F.2d 90 (3d Cir.1977), Mr. Bravman, an established furniture manufacturer's representative, gave up representation of all other furniture manufacturers in return for the exclusive right to solicit orders for certain Bassett products. During the employment relationship, at Bassett's insistence Bravman hired an associate at his own expense. Prior to his employment with Bassett, Bravman had been able to offer his customers a full line of furniture but had to forego that luxury when he went to work for Bassett. During his employment with Bassett, Mr. Bravman personally guaranteed the credit worthiness of many of the accounts from whom Bravman solicited orders. Bravman turned down other opportunities to represent other manufacturers. When Bassett attempted to deprive Mr. Bravman of his representation of their product lines, the trial court sustained a directed verdict in Bassett's favor. The appellate court reversed, however, holding among other things, that a jury could have found the presence of additional consideration.

Additional consideration will also be regarded as sufficient when the new employee must undergo a substantial hardship such as moving his family to take the new position. *See Lucacher v. Kerson, supra.*

Thus, a court will find "additional consideration" when an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform. "If the circumstances are such that a termination of the relation by one party will result in great hardship or loss to the other, as they must have known it would when they made the contract, this is a factor of great weight in inducing a

holding that the parties agreed upon a specific period." 3 A. Corbin, *Corbin on Contracts* § 684 (1960).

■ In the instant case, we find that appellant did not render additional consideration sufficient to overcome the at-will presumption. The fact that appellant decided to forego any opportunity at Honeywell, his former employer, to assume a supervisory position when he went to work for General Electric appears to us not to be a sufficient detriment to constitute sufficient additional consideration, but rather was simply a reasoned choice of a new career goal. Termination by General Electric fifteen years into his service does not qualify as "great hardship or loss" to appellant which both parties contemplated at the time the contract was made. *See* 3 A. Corbin, *Corbin on Contracts* § 684 (1960).

■ Nor do the additional duties performed by appellant, including a heavy travel schedule and teaching a course at Penn State, constitute additional consideration. The heavy travel schedule, which forced appellant to be away from his family and for which he was not paid overtime even when he worked double shifts, seems to be a detriment commensurate with that incurred by all manner of salaried professionals. And, appellant does not allege that had he refused to teach the course, his position with General Electric would have been in jeopardy.

In short, appellant did not bargain from the enhanced position that we would require of one who has given his employer sufficient additional consideration. He has not incurred an extraordinary detriment or bestowed an extraordinary benefit beyond the normal services for which he was hired. Thus, the at-will presumption has not been overcome by evidence of additional consideration.

The additional consideration rule usually does not offer relief from the at-will presumption to the typical, lower echelon employee who brings nothing beyond his skills to the employment. Nor does it offer relief to the typical white collar professional such as appellant. However, do

we not believe the rule to be inherently "unfair" any more than other facets of the law of contracts which, generally, does not realter the economic positions from which parties bargain. All manner of contracts are formed between parties of unequal bargaining strength. The law of contracts has traditionally acted as umpire to contractual disputes—that is, it does not reassign the players to even-out the teams, but insures that the game is played fairly, regardless of the disparity of bargaining power.

Appellant also contends that prior to being hired at General Electric, he inquired as to the procedures that would be followed in case he encountered a problem with his employers. Appellant testified that he was given a small manual containing the procedures to be followed in the event such a problem arose. He further argues that, even if the manual was not part of the bargained-for contract of employment, he relied on it. In *DeFrank v. County of Greene*, 50 Pa. Commonwealth Ct. 30, 412 A.2d 663 (1980), it was held that discharged employees may have a cause of action against their employers where they reasonably relied on procedures to be followed prior to discharge.

Professor Henry Perritt has given succinct articulation to the question confronting us.

[T]raditional unilateral contract doctrine requires that the employee prove that the promise alleged was communicated to him or her under circumstances that the employer should have known would induce reliance, and that the employee reasonably relied on the promise to his or her detriment. Then, having established an enforceable promise, the plaintiff-employee must show a breach, with reference to the terms of the promise. For example, a termination without good cause is not a breach, unless the employer promised to discharge only for cause; breach of a promise to follow certain procedures in terminating employees is shown only by proving that the procedures were not followed. In the latter case, whether or not there was cause for dismissal is immaterial.

H.A. Perritt, *Employee Dismissal Law in Pennsylvania*, 55 Pa.B.A.Q. 212, 218 (1984) (footnotes omitted).

Appellant presented a company handbook as evidence of the procedures to be utilized in case a problem arose. In *Richardson v. Charles Cole Memorial Hospital*, 320 Pa.Super. 106, 466 A.2d 1084 (1983) this court held that "[a]ppellant's unilateral acts of publishing its policies did not amount to the 'meeting of the minds' required for a contract. The terms of the handbook were not bargained for by the parties and any benefits conferred by it were mere gratuities." *Id.*, 320 Pa.Superior Ct. at 108, 466 A.2d at 1085. Moreover, even if the procedures in the handbook had been part of the contract or were relied upon by appellant, he has not presented sufficient evidence showing that the procedures were violated. The procedures merely afforded an employee the opportunity to seek resolution of his grievance at various levels of management. They do not state that they are applicable to termination decisions. According to the procedures, the employee would first seek resolution of his problem at lower levels, and if not resolved there, he could proceed to higher management levels. Appellant does not argue that the company failed to allow the dispute to be heard at higher management levels. Because the handbook does not evince an intent to discharge only for "cause", as Professor Perritt put it, "whether or not there was cause for dismissal is immaterial." There is a particular problem with employee manuals or handbooks: such documents may be generally unread or not understood. If such documents were to be viewed as binding upon the employer, courts would then have to consider their binding force upon employees who, again, may not have read or understood all of the provisions and conditions of such documents as literally applicable to employees. This is not to suggest a return to the fallacious "mutuality of obligation" argument. Professor Corbin is particularly illuminating with respect to the "mutuality of obligation" argument.

If the employer made a promise, either express or implied, not only to pay for the service but also that the employment should continue for a period of time that is either definite or capable of being determined, that employment is not terminable by him 'at will' after the employee has begun or rendered some of the requested service or has given any other consideration (or acted in reliance on the promise in such a manner as to make applicable the rule in Restatement, Contracts, § 90). This is true even though the employee has made no return promise and has retained the power and legal privilege of terminating the employment 'at will.' The employer's promise is supported by the service that has been begun or rendered or by the other executed consideration or action in reliance.

1 A. Corbin, *Contracts* § 152.

Appellant also argues that General Electric lacked sufficient cause to discharge him and that it acted unreasonably and in bad faith. He further alleges that during the period of time for which he was being investigated by the company, he was not represented by anyone acting in his interest. There was, according to appellant, an "arbitrariness" about the investigation, with the company hurriedly trying to force him to resign or face accusations of criminal wrongdoing. Moreover, he alleges that the investigation should have been handled in such a way as to allow him access to questioned items and an opportunity to be heard in his own defense. In short, he alleges that the *manner* in which the investigation was carried out cries out for us to hold the discharge "wrongful."

The handbook procedures cited by appellant do not guarantee a new employee that General Electric will decide employment disputes by referring to the rules applied in the judicial forum. Nor do they guarantee that the procedural protections so highly cherished in this court will be followed in the corporate arena when decisions to terminate are made. They simply state a procedure to be followed when a dispute arises between employer and employee. The guide-

lines state that disputes will be settled by the employer, not a jury. Were we to open the tribunals of justice and allow juries to decide every question involving an at-will employee dismissal, we would be allowing them to dictate the business policies of the giant corporation and the family-run business alike. Since we find no contract to overcome the at-will presumption, and no public policy violation (see our discussion below), the court cannot interfere with General Electric's decision to discharge appellant.

Appellant cites *Yaindl v. Ingersoll-Rand,* 281 Pa.Super. 560, 422 A.2d 611 (1980) to support his proposition that the manner of discharge has always been considered a relevant factor in judging the wrongfulness of a discharge. *Yaindl* was basically a case wherein this court applied the public policy exception to the employment at-will rule. In *Yaindl,* we wrote that in reviewing an order dismissing a claim for wrongful discharge, "we must weigh several factors, balancing against appellant's interest in making a living, his employer's interest in running its business, its motive in discharging appellant and the manner of effecting the discharge, and any social interests or public policies that may be implicated." *Yaindl, Id.,* 281 Pa.Superior Ct. at 577, 422 A.2d at 620. Chief among the other factors against which the "manner of the discharge" must be weighed is the one concerning "public policy". If an employee's discharge is in contravention of public policy, courts hold the discharge to have been wrongful. But, if the discharge was not against public policy, and there is no contractual provision to prevent it, courts generally find that no rights have been violated by the discharge. Thus, although appellant does not argue the "public policy" exception by name, *Yaindl* requires that it be considered in weighing the aforementioned factors.

In recent times, courts have become more willing to examine the circumstances of a discharge to see if it contravenes certain notions of "public policy" and to afford relief accordingly. However, the aura of certainty engendered by the at-will presumption has not been significantly disrupted

by these theories. Courts have only impinged on the presumption in very limited, piecemeal ways, and we are presented no evidence in the instant case that appellant's discharge in any way contravened "public policy" so as to entitle him to relief.

The public policy exception has at times been called a contractual remedy. "Any contract, including a contract at will, which is terminated for a reason contrary to the public policy of Pennsylvania gives rise to a claim for breach of contract." *McGinley v. Burroughs Corporation,* 407 F.Supp. 903, 911 (E.D.Pa.1975). Although the remedy seems to lie in a twilight area between trespass and assumpsit, Pennsylvania has taken the position that "wrongful discharge" based on contravention of public policy sounds in trespass rather than assumpsit. *See Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978). Moreover, wrongful discharge has been called a species of the more inclusive tort of *intentional interference. Yaindl v. Ingersoll-Rand Co. Standard Pump-Aldrich Division, supra.* In Pennsylvania, the cause of action seems to have had its genesis in *Geary v. United States Steel Corporation,* 456 Pa. 171, 184–85, 319 A.2d 174, 180 (1974):

It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened. The notion that substantive due process elevates an employer's privilege of hiring and discharging his employees to an absolute constitutional right has long since been discredited. But this case does not require us to define in comprehensive fashion the perimeters of this privilege, and we decline to do so. We hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at

will has no right of action against his employer for wrongful discharge.

Pennsylvania state appellate courts have dealt with "wrongful discharge" in only a handful of published opinions since *Geary. See* Comment, *The Role of Federal Courts in Changing State Law: The Employment At Will Doctrine in Pennsylvania,* 133 U.Pa.L.Rev. 227 (1984). Pennsylvania recognizes a cause of action for wrongful discharge "only in the absence of a statutory remedy and only when important and well recognized facets of public policy [are] at stake." *Rettinger v. American Can Co.,* 574 F.Supp. 306, 311 (M.D.Pa.1983). *See also Molush v. Orkin Exterminating Co., Inc.,* 547 F.Supp. 54 (E.D.Pa.1982); *Shaw v. Russell Trucking Line, Inc.,* 542 F.Supp. 776 (W.D.Pa. 1982). In *Geary,* the court rejected a cause of action by an employee allegedly discharged in retaliation for voicing his disapproval about a new product made by his employer. Mr. Geary alleged the product was dangerous and, in effect, was discharged despite, and because of, his good intentions. Thus, Pennsylvania seems to recognize a *narrow* public policy exception. *Bruffett v. Warner Communications, Inc.,* 692 F.2d 910 (1982). Pennsylvania courts recognize this cause of action only when the employment is at-will. *Harrison v. Fred S. James, P.A., Inc.,* 558 F.Supp. 438 (E.D.Pa.1983). Thus, this cause of action may be pursued only if no statutory or contractual remedy is available. *See Wehr v. Burroughs Corp.,* 438 F.Supp. 1052 (E.D.Pa.1977). "[U]nless the complaint discloses an allegation of (1) specific intent to harm the employee, or (2) violation of a clear mandate of public policy, there is no cause of action for tortious wrongful discharge." *Jenkins v. United Steel Workers of America,* 522 F.Supp. 80, 85 (E.D.Pa.1981). Thus, an "intent to harm" may also give rise to a wrongful discharge action. *See Yaindl, supra; Harrison v. Fred S. James, P.A., Inc.,* 558 F.Supp. 438 (E.D.Pa.1983).

In the instant case, we have been presented no specific allegation that General Electric discharged Mr. Darlington with the specific intent of harming him. More-

over, a broad assertion that the employer acted intentionally, wrongfully, and without justification does not meet the *Geary* test. *Rogers v. International Business Machines, Corp.*, 500 F.Supp. at 869 (W.D.Pa.1980).

As for whether the discharge calls for a remedy due to a violation of public policy, we first note the reluctance of courts to allow recovery based on novel theories of public policy. *See Callahan v. Scott Paper Co.*, 541 F.Supp. 550 (E.D.Pa.1982); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 195 (3d Cir.1977); *O'Neill v. ARA Services*, 457 F.Supp. 182, 187 (E.D.Pa.1978).

"Public Policy" is a term difficult to define. In *Cisco v. United Parcel Services, Inc.*, 328 Pa.Super. 300, 306, 476 A.2d 1340, 1343 (1984), Judge Cercone wrote:

A clear statement of what public policy actually consists is hindered by its varying manifestations. As the Supreme Court of New Jersey observed:

The sources of public policy [which may limit the employer's right of discharge] include legislation; administrative rules, regulation, or decision; and judicial decision. In certain instances, a professional code of ethics may contain an expression of public policy.... Absent legislation, the judiciary must define the cause of action in case-by-case determinations.

*Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505, 512 (1980), in Pierce, Mann, Roberts, "Employee Termination at-Will: A Principled Approach," 28 Villanova L.R. 1, 26 (1982).

Pennsylvania courts have held that employees may not be discharged for serving jury duty, *Reuther v. Fowler & Williams, Inc., supra;* nor for their refusal to submit to a polygraph test (as a statute forbids such testing), *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir.1979); nor for reporting motor vehicle violations, *Shaw v. Russell Trucking Lines, Inc.*, 542 F.Supp. 776 (W.D.Pa.1982); nor for refusal to violate antitrust laws, *McNulty v. Borden, Inc.*, 474 F.Supp. 1111 (E.D.Pa.1979). *See* Note, *Public Policy Limitations To The Employment At-Will Doctrine*

*Since Geary v. United States Steel Corporation,* 44 U.Pitt. L.Rev. 1115 (1984). An employee may not be discharged for refusal to participate in a lobbying effort as it is in contravention of his First Amendment rights. *Novosel v. Nationwide Insurance Co.,* 721 F.2d 894 (3d Cir.1983). However, these cases represent exceptions to the rule. *Callahan v. Scott Paper Co.,* 541 F.Supp. 550 (E.D.Pa. 1982). As we stated in *Rossi v. The Pennsylvania State University,* 340 Pa.Super. 39, 55, 489 A.2d 828, 836 (1985), there is no cause of action for an employee who was discharged after attempting "to assume management prerogatives." To allow such a cause of action in that instance "would have the unwise effect of transferring to the judicial forum the duty of evaluating the propriety of management decisions." "The company's failure to follow its own evaluation policies is also insufficient to state a cause of action for wrongful discharge." *Boresen v. Rohm & Haas, Inc.,* 526 F.Supp. 1230, 1235–36 (E.D.Pa.1981). (Of course, we are referring to the *tort* action here. It is, of course, another question altogether whether such action would give rise to a cause of action in *contract.*) Appellant argues that the investigation leading to his discharge was too heavily slanted against him and gave him no true opportunity to assert his interest in preserving his livelihood.

On balance, even assuming that the manner of effecting the discharge in the instant case was accomplished in an arbitrary fashion and that appellant was not given an adequate chance to defend against evidence which was stacked against him, he has not shown that any statutory exception to the at-will rule applies, nor has he shown any public policy violation. It may even be that the employer simply wanted to be rid of appellant and so did not give him a fair hearing. This does not rise to the level of a public policy violation. The policy underlying the at-will presumption mandates that where there is no contract to rebut the at-will presumption, and where no public policy has been violated by the discharge, we must weigh the employer's interest in running his business more heavily than all the

other interests. Inherent in the at-will presumption itself is an important public policy—that the employer should be master of his business.

■■ We conclude that the evidence failed to demonstrate any legal basis for recovery and that the trial court's entry of judgment n.o.v. was correct.

Judgment affirmed.

BECK, J., files concurring opinion.

BECK, Judge, concurring:

I agree with the majority's conclusion that the trial court should be affirmed because appellant has failed to establish that General Electric breached a contract when it discharged him. However, I write separately to address certain ramifications of at-will employment which the majority touches but does not emphasize.

In this case appellant sought to remove himself from the status of at-will employment by establishing an enforceable employment contract and its breach. First, appellant contends that the dealings between the parties show that he was promised employment in a "long range program" which created a contract of employment for a "reasonable length of time." The majority is correct when it states that such expressions as "permanent employment," "reasonable length of time" and "long range" do not create a contract for a specific tenure (length) of employment. The issue was decided in *Richardson v. Charles Cole Memorial Hospital*, 320 Pa.Super. 106, 466 A.2d 1084 (1983), where this Court held that a statement by the employer that its policy was "to provide continual employment to all employees whose work proves satisfactory" did not establish a definite tenure of employment.

The majority's thorough opinion addresses the general requirements for converting at-will employment into something more. The majority correctly concludes that the "additional consideration rule usually does not offer relief from the at-will presumption to the typical, lower echelon

employee ... [n]or ... to the typical white collar professional such as appellant." Majority op. at 315.

However, the majority's comprehensive discussion does not address whether employees can establish rights beyond at-will employment by means other than the additional consideration rule. I think they can.

Relying on an employment manual or handbook provided by the employer, an employee can establish contractual rights which prevent his being treated as an at-will employee subject to dismissal for any reason whatsoever or for no reason at all.

Provisions in a handbook or manual can constitute a unilateral offer of employment which the employee accepts by the continuing performance of his or her duties. *See Banas v. Matthews International Corp.*, 348 Pa.Super. 464, 502 A.2d 637 (1985) (Beck, J., concurring and dissenting). A unilateral contract is a contract wherein one party makes a promissory offer which calls for the other party to accept by rendering a performance. *See* Restatement (Second) of Contracts § 45 and Comment (a) thereunder (1981). In the employment context, the communication to employees of certain rights, policies and procedures may constitute an offer of an employment contract with those terms. The employee signifies acceptance of the terms and conditions by continuing to perform the duties of his or her job; no additional or special consideration is required. *See Salimi v. Farmers Insurance Group*, Colo.App., 684 P.2d 264 (1984); *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980); *Pine River State Bank v. Mettille*, Minn., 333 N.W.2d 622 (1983); *Morris v. Lutheran Medical Center*, 215 Neb. 677, 340 N.W.2d 388 (1983); *Southwest Gas Co. v. Ahmad*, 99 Nev. 594, 668 P.2d 261 (1983); *Woolley v. Hoffmann-LaRoche, Inc.*, 99 N.J. 284, 491 A.2d 1257 (1985); *Hillis v. Meister*, 82 N.M. 474, 483 P.2d 1314 (1971); *Weiner v. McGraw-Hill Inc.*, 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982); *Langdon v. Saga Corp.*, 569 P.2d 524 (Okla.Ct.App.

1976); *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 685 P.2d 1081 (1984).

In most of the cases applying the unilateral contract theory, the employee has used the terms of an employee manual as the source of the promises on which he bases his contractual claim. *See Banas v. Matthews International Corp.*, (Beck, J., concurring and dissenting). Appellant unsuccessfully makes a similar claim in the case sub judice. Appellant contends that certain provisions in General Electric's *Handbook for Exempt Employees* entitled "Problem Solving" constituted contractual obligations which were breached by General Electric. The majority does not actually decide whether the handbook had contractual significance, but concludes that even if it did, it did not create a contract whereby appellant could be dismissed only for cause.

I would add to the majority's conclusion my conviction that the handbook has contractual significance although appellant has no enforceable right under it for continued employment. I would so hold based on the well-reasoned decisions of our sister states, especially the unanimous holding of the New Jersey Supreme Court in *Woolley*.