**Kenneth BEYDA, Plaintiff,**

v.

**USAIR, INC., Eastern Airlines, and Dewey Dewitt Foster, Defendants.**

**Civ. A. No. 86–2741.**

United States District Court,
W.D. Pennsylvania.

Oct. 31, 1988.

Kenneth Behrend, Behrend Moran Ernsberger & Tamilia, Pittsburgh, Pa., for plaintiff.

Dennis R. McEwen, Berkman, Ruslander, Pohl, Lieber & Engel, Pittsburgh, Pa., for USAir.

William A. Pietragallo, Pietragallo Bosick & Gordon, Pittsburgh, Pa., for Eastern Airlines and Foster.

## OPINION

GERALD J. WEBER, District Judge.

Defendants have filed motions for summary judgment on all claims in this wrongful discharge/defamation suit. The parties have submitted briefs and supporting evidentiary materials.

## FACTS

In May 1985, plaintiff was a navy pilot coming to the end of his enlistment when he began to seek work as a commercial pilot with various airlines. On May 23, 1985, plaintiff had his initial interview with USAir. After passing a physical and flight tests, he was hired. Plaintiff began work on June 5, 1985 with the rank of Reserve First Officer. After completing a one month training course, plaintiff served as a co-pilot on domestic passenger flights.

One of the perks of such an airline job is the opportunity to ride free in the cockpit of any airline. This is a commonly referred to as jumpseat privileges. It is not a right, but is solely within the discretion of the flight captain.

On October 15, 1985 in Atlanta, plaintiff sought jumpseat privileges on an Eastern Airlines flight. The captain, defendant Foster, refused. From here, the parties' versions of events diverge, but for the purpose of these motions we view the evidence in the light most favorable to plaintiff.

Plaintiff did not dispute Captain Foster's right to refuse jumpseat privileges but he did ask gate personnel for the Captain's name. One of these employees told the Captain that plaintiff wanted his name. The Captain came off the plane and confronted plaintiff at the gate. By one witness account the Captain's conduct was "maniacal and deranged." On the other hand, defendants contend that plaintiff harassed gate personnel and disrupted boarding of the flight.

Captain Foster submitted a report of the incident to his supervisor at Eastern. Eastern's management forwarded the report to USAir. After requesting and receiving plaintiff's version of events, USAir gave plaintiff the choice of resigning or being fired. Plaintiff resigned on November 1, 1985, about five months after his hiring.

Plaintiff filed a 5-count complaint charging Eastern and Foster with intentional interference with plaintiff's employment contract and defamation, and charging USAir with wrongful discharge and defamation. Defendants have filed motions for summary judgment on all counts.

## DISCUSSION

### 1) USAir—Implied Contract.

Plaintiff does not claim any written contract of employment nor any oral prom-

ise of employment for a definite period. Rather, plaintiff alleges the existence of an implied contract of employment for a reasonable period of time.

In Pennsylvania employment is presumed to be at will. However, where an employee demonstrates that he has provided additional consideration other than the services for which he is hired, the law will infer that the parties intended that employment extend for a "reasonable period" rather than be terminable at will. *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 314 (1986). Additional consideration may be some benefit to the employer or detriment to the employee other than that inherent in performance of the job. *Id.*

■ In the case at bar plaintiff identifies four items of additional consideration:

1) He gave up his position with the U.S. Navy;

2) He turned down a job offer from Eastern;

3) He moved his family to Pittsburgh;

4) He took a one month flight training course at USAir.

We can quickly dispense with the last item. Flight training was a requirement of the job. It was not an additional benefit or detriment but was rather a part of plaintiff's services which the parties contracted for.

As for plaintiff's relinquishing or foregoing other employment opportunities, we recognize that such acts may in appropriate circumstances constitute sufficient additional consideration to rebut the at-will presumption. Likewise the expense and personal hardship of relocating one's family may be additional consideration. See, *Darlington*, 504 A.2d at 315; *Lucacher v. Kerson*, 158 Pa.Super. 437, 45 A.2d 245 (1946). However, plaintiff's departure from the Navy appears to have been a foregone conclusion—plaintiff had not re-enlisted, he had applied for jobs with six airlines and had received a job offer from Eastern. Also, any one of the jobs plaintiff sought would have involved relocation and Pitts-

burgh was most palatable because plaintiff's wife's family resides here.

However, even if these facts permitted a finding of additional consideration sufficient to establish an implied contract, it is clear in this case that the parties specifically and explicitly contracted for at-will employment. First of all, the application for employment contains the following language:

I understand that if I am employed, such employment is for an indefinite period of time and that US Air can change wages, benefits and conditions at any time.

Furthermore, the collective bargaining agreement covering USAir pilots creates a 1–year probationary period and excludes probationary employees from the contractual guarantees of investigation and hearing prior to dismissal or discipline. In his deposition, plaintiff explained his understanding of the probationary period.

Q. When Donna Pormosa called you and invited you for training and offered you a position with U.S. Air, was it your understanding that you would have a probationary period of employment?

A. Yes.

Q. What was your understanding of the length of time for that probationary period?

A. Twelve months from date hired.

Q. Did you understand that to mean that there were 12 months, during which time your employment and all of it would be observed and studied before a determination was made as to whether or not permanent employment would be offered?

A. I would have to say yes.

(Beyda Depo., pp. 16–17).

*Darlington* made clear that even if additional consideration is present, if the parties specifically contracted for at-will employment, the court must enforce the intent of the parties. 504 A.2d at 314. Although the presumption of at-will employment may be rebutted by evidence of additional consideration, the presumption of employment for a reasonable time created by the addi-

tional consideration may itself be rebutted by evidence of the parties' intention to contract for at-will employment. *Id.*

The evidence here is uniform—the parties contemplated only an at-will employment relationship. The job application disclaims any job guarantees and the collective bargaining agreement creates a probationary period which plaintiff fully understood. Summary judgment will be entered in favor of defendant USAir on Count III of plaintiff's Complaint.

2) Public Policy—Intent to Harm.

In Pennsylvania, even an at-will employee may state a cause of action if his discharge threatens some clear mandate of public policy. *Geary v. U.S. Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974).

In Count IV of the Complaint, plaintiff alleges that he and other pilots were discharged so that the company could hire new pilots at more favorable terms under a new collective bargaining agreement. Even if we were to divine some violation of public policy from these facts, plaintiff has failed to brief the issue or to provide any evidentiary support.

Plaintiff also claims that his was a retaliatory discharge. Plaintiff argues that Captain Foster filed his report in retaliation for a report that Foster thought plaintiff was going to file, and as a result plaintiff was discharged. Again, we find no public policy violation, but in any event the alleged retaliation was by Foster, an Eastern employee, and not by USAir. Such facts will not support a wrongful discharge claim against USAir.

Finally, plaintiff alleges that in discharging him USAir was motivated simply by the intent to harm him. Such an allegation of personal animus, if properly supported, would state a prima facie case for wrongful discharge. E.g., *Tourville v. Interocean Insurance Co.*, 353 Pa.Super. 53, 508 A.2d 1263 (1986). Defendant's intent to harm may be established by circumstantial evidence, including the disproportionate severity of the punishment, more lenient treatment of other similar offenders, and the contemporaneous utterance of defam-

atory comments. *Id.; Shipkowski v. U.S. Steel Corp.*, 585 F.Supp. 66 (E.D.Pa.1983).

The failure in this claim lies in plaintiff's failure to identify any motive for such malevolence. The air line official with the sole power to fire plaintiff states that, prior to the jumpseat incident, he didn't know plaintiff from any of the other 1400 USAir pilots. Neither apparently did any of the other officials who conferred on plaintiff's discharge. Plaintiff has failed to counter such evidence leaving only the bare allegation of animus which cannot withstand scrutiny on summary judgment.

Accordingly summary judgment will be granted to defendants on plaintiff's claims of discharge in violation of some public policy.

3) Defamation by USAir.

In response to USAir's motion for summary judgment plaintiff alleges that USAir defamed him on three occasions: 1) in discussions with Eastern when Eastern first reported the jumpseat incident; 2) in internal discussions among USAir officials; and 3) in response to an inquiry from a prospective employer of plaintiff. USAir contends that the communications were not defamatory and in any event were made under privilege.

We can quickly dispose of the first alleged incident of defamation, which was not pleaded in the Complaint. In any event we cannot see how plaintiff can establish any special harm from that communication because the recipient of the statement, Eastern, already believed plaintiff to be contentious and insubordinate.

As for the internal discussions among USAir officials, it is not disputed that the persons engaged in these discussions were plaintiff's superiors, and were responsible for the investigation of the incident and the selection of discipline. As such, discussions among these persons were privileged. *Burns v. Supermarkets General Corp.*, 615 F.Supp. 154 (E.D.Pa. 1985); *Keddie v. Pennsylvania State University*, 412 F.Supp. 1264 (M.D.Pa. 1976). The privilege ensures that the employer has full opportunity to investigate a

complaint and consider his action, and free discussion of the charges and all possibly relevant information is essential. Here there is no evidence that any information about plaintiff was communicated beyond the circle of management responsible for investigation and disciplinary action. The privilege having been established and no evidence of abuse advanced, summary judgment on this charge is appropriate.

Finally, plaintiff alleges that after his discharge by USAir, he sought employment with Executive Air. Plaintiff advised this prospective employer of the events which led to his discharge and Executive Air contacted USAir. Captain Trapp of USAir informed Executive Air that plaintiff was discharged after getting into "a pissing contest" with an Eastern pilot. Plaintiff was not hired by Executive Air and he alleges that Captain Trapp's remark was defamatory.

■ First of all, it appears that the only evidence of this communication is contained in plaintiff's deposition (pp. 157–159) in which plaintiff indicates that the owner of Executive Air told plaintiff about Captain Trapp's comment. It is clear that this is rank hearsay. In considering a summary judgment motion the court may rely only on evidence admissible at trial. The court may not consider hearsay evidence. E.g., *Pan–Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539 (5th Cir.1980), *cert. den.* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981); *Taylor v. Rederi A/S Volo*, 249 F.Supp. 326 (E.D.Pa.1966), rev'd on other grounds, 374 F.2d 545 (3d Cir.1967) *Green v. Benson*, 271 F.Supp. 90 (E.D.Pa.1967). Consequently, the record contains no evidence of a defamatory communication from USAir and plaintiff's claim is unable to withstand summary judgment.

For the reasons stated, summary judgment will be entered in favor of USAir on the defamation claims contained in Count V of plaintiff's complaint.

### 4) Interference with Contract.

Plaintiff has charged Eastern and its pilot, Foster, with intentional interference with a contractual relationship, alleging that these defendants communicated a false report on the jumpseat incident to USAir with the intention of causing harm to plaintiff's relationship with his employer. Eastern and Foster deny these allegations of course and maintain that their version of the incident is true, but these are issues for the factfinder.

■ Defendants argue on summary judgment that plaintiff is unable to establish a cause of action for interference with a contractual relationship because plaintiff was merely a probationary employee, terminable at will. Defendants argue that because plaintiff had no contractual rights to assert against his employer, he had no contract which Eastern and Foster could interfere with.

The argument is ingenious but specious. Plaintiff had a contractual relationship for employment, albeit terminable at will. If Eastern and Foster intentionally caused USAir to terminate that contract by communicating a false version of events, the tort claim has been established. Though the at will doctrine protects the employer from contractual liability, it offers no comfort to a third party tortfeasor whose wrongful conduct interferes with the employment relationship. The policies which sustain the at-will doctrine, whatever their wisdom or lack of it, are not intended to benefit a party apart from the employment relationship.

Defendants' reliance on *Roseman v. Hassler*, 382 F.Supp. 1328 (W.D.Pa.1974), aff'd 520 F.2d 1364 (3d Cir.1975), is unavailing. The District Court addressed the matter only in passing and the Circuit not at all. Factually, it is important to note that Roseman was a college professor denied tenure. Unlike plaintiff here, she was hired for a specific term and served until it expired. She was not denied her present employment, but was not granted future employment. It is also important to note that the persons alleged to have interfered with her employment relationship with the college were themselves officials of the college who acted under privilege. In the present case Eastern and Foster are merely third

parties with no direct interest in the plaintiff's employment relationship.

Defendants also argue that legitimate interests of airline comity justified their action in reporting plaintiff's conduct to USAir. This argument presupposes that Foster and Eastern's version is true and not motivated by malice or revenge when in fact this is a sharply contested factual issue supported by evidentiary material.

For the reasons stated the motion of Eastern and Foster for summary judgment on plaintiff's claim of intentional interference with a contractual relationship will be denied.

5) Defamation—Eastern and Foster.

In Count II of the Complaint plaintiff alleges that Eastern and Foster defamed plaintiff by communicating a false version of the jumpseat incident which injured plaintiff's reputation. Defendants seek summary judgment on the grounds that the reports made by Foster and Eastern are not defamatory. To the contrary facts of record indicate that defendants' reports may have been false and wrongly accused plaintiff of insubordination, certainly a defamatory statement to make to one's employer.

Defendants also seek summary judgment on the basis of a conditional privilege, arguing again that legitimate interests of airline comity justified communication of plaintiff's insubordination to his employer. Again the argument as made in the brief assumes that defendants' version is true, but plaintiff's description of events indicates that Foster's version was false and motivated by ill will or malice. Summary judgment is unavailable in the face of a disputed issue of fact.

6) Statute of Limitations—Defamation.

Pennsylvania has a one year limitations period for defamation actions. 42 Pa.C.S.A. § 5523(1). Defendant Foster prepared his Line Pilot Report concerning the jumpseat incident on October 15, 1985. The original Complaint in this action was filed in Common Pleas Court on October 15, 1986, but it named as a defendant David Foster. Plaintiff did not serve defendant Dewey DeWitt Foster until February 17, 1987, and the Complaint was amended April 3, 1987 to correct the name of the defendant.

Defendant Foster contends that the Complaint is untimely filed as to him because he was not the person sued in the original Complaint filed on the last day of the one year limitations period. We think this is merely a case of correcting a misnomer, and under the first sentence of Fed.R. Civ.P. 15(c) the amendment will relate back to the original Complaint. See Wright & Miller, *Fed. Practice and Procedure* § 1498; and e.g., *Malmrose v. Estate of F.G. Aljoe*, 92 F.R.D. 490 (W.D.Pa.1981); *Boatman v. Thomas*, 320 F.Supp. 1079 (M.D.Pa.1971). Because the amendment merely corrects a misnomer and does not in fact change parties, and because the original Complaint was timely served and no prejudice has been demonstrated, the amendment relates back and plaintiff's claims against Foster are timely.

CONCLUSION

For the reasons stated, summary judgment will be granted in favor of USAir on all claims. However, the motion of Eastern and Foster for summary judgment will be denied and plaintiff's claims against those defendants for defamation and tortious interference with contract remain viable.